**NATIONAL MEDICAL ENTERPRISES, INC., Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D.,\* Secretary of Health and Human Services, Defendant–Appellee.**

**No. 90–55287.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1991.

Decided Feb. 20, 1992.

---

\* Louis W. Sullivan is substituted for Otis R. Bowen, former Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

Patric Hooper, Hooper, Lundy & Book-man, Los Angeles, Cal., for plaintiff-appellant.

Donna Eden, Office of the General Counsel, Dept. of Health and Human Services, Baltimore, Md., for defendant-appellee.

Before TANG, REINHARDT and WIGGINS, Circuit Judges.

REINHARDT, Circuit Judge:

This case involves a challenge to the validity of a regulation promulgated by the Secretary of Health and Human Services (the Secretary [1]) that limits the cumulative allowable return on equity capital attributable to goodwill payable to Medicare providers. The primary question presented is whether the regulation is reasonably related to the purposes of the Medicare statute

---

1. Throughout this opinion, "Secretary" shall mean either the Secretary of the Department of Health and Human Services (DHHS) or the Secretary of DHHS' predecessor, the Department of Health, Education and Welfare, whichever is relevant. Pub.L. No. 96–88, 93 Stat. 696 (1979).

and thus within the Secretary's authority to issue. We conclude that the regulation is so related, and that its provision for the calculation of cumulative return on goodwill does not constitute unlawful retroactive rulemaking. Accordingly, we affirm the district court's grant of summary judgment to the Secretary.

## I

For the years at issue in this appeal, the Medicare statute, 42 U.S.C. §§ 1395 *et seq.,* authorized payment to all types of proprietary (for-profit) providers of health care services of "a reasonable return on equity capital ... invested in the facility and used in the furnishing of such services." *Id.* § 1395x(v)(1)(B) (1988).[2] The statute expressly delegated the task of defining Medicare reimbursable equity capital to the Secretary. *Id.* § 1395x(v)(1)(A)–(B). Prior to 1970, the Secretary's regulations permitted the inclusion in Medicare reimbursable equity capital of goodwill, defined as "the excess of the price paid for such facility or assets over the fair market value of tangible assets at the time of purchase." 20 C.F.R. § 405.429 (1969).[3] In 1970, the Secretary eliminated Medicare reimbursement for goodwill for proprietary facilities acquired after August 1, 1970. 35 Fed.

Reg. 12,330 (1970), codified as amended at 42 C.F.R. § 413.157(c)(2) (1990). In 1976, the Secretary issued the regulation that is the subject of this appeal. The 1976 amendment to the regulation governing return on equity capital limited the cumulative allowable return on goodwill for pre-August, 1970, acquisitions to one hundred percent, commencing with payments made on or after August 1, 1970. 41 Fed.Reg. 46,291 (1976), codified as amended at 42 C.F.R. § 413.157(c)(3) (1990). Thus, for example, if the annual Medicare rate of return on equity capital approximated ten percent, reimbursement for that portion of a pre-August, 1970, equity capital investment attributable to goodwill would cease after ten years.

Appellant National Medical Enterprises, Inc., (NME) is a publicly traded Nevada corporation that owns and operates proprietary hospitals and other health-related businesses throughout the United States. NME purchased the hospitals at issue in this appeal in 1969, at prices that reflected positive amounts of goodwill. From 1969 through 1979, NME received Medicare return on equity capital payments that included reimbursement for that goodwill. In 1980, pursuant to the 1976 amendment to the regulation governing return on equi-

---

**2.** The Medicare Act requires that providers of health care services to covered individuals be paid the lesser of their customary charges or the "reasonable cost" of those services. 42 U.S.C. § 1395f(b)(1) (1988). When Congress enacted the Medicare Act in 1965, it specified that "[r]easonable costs should include appropriate treatment of depreciation on buildings and equipment ... as well as necessary and proper interest on capital indebtedness." S.Rep. No. 404, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.C.C.A.N. 1943, 1977. In 1966, Congress amended the newly enacted statute to require that proprietary providers of extended care services (defined as services furnished to inpatients in a skilled nursing facility, Social Security Amendments of 1965, Pub.L. 89–97, sec. 102(a), § 1861(h), 79 Stat. 316, codified as amended at 42 U.S.C. § 1395x(h) (1988)) be accorded "specific recognition of a reasonable return on equity capital ... in lieu of other allowances to the extent that they reflect such items." Pub.L. 89–713, sec. 7, 80 Stat. 1111 (1966), codified as amended at 42 U.S.C. § 1395x(v)(1)(B) (1988). The legislative history of the amendment authorized the Secretary to "apply similar or comparable principles in determining reasonable costs

for reimbursement of proprietary hospitals." Conf.Rep. No. 2317, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.C.C.A.N. 3676, 3692, 3692–93. In response to the 1966 amendment, the Secretary issued regulations that provided for specific recognition of a reasonable return on equity capital applicable to all types of proprietary providers, rather than treating the capital-related costs of non-extended care providers as a component of the "reasonable cost" calculation. 31 Fed.Reg. 14,186 (1966), codified as amended at 42 C.F.R. § 413.157 (1990).

The Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, 100 Stat. 82 (1986), amended the Medicare statute to provide for gradual elimination of the return on equity capital payment for proprietary hospitals. For cost years beginning on or after October 1, 1989, the rate of return on equity capital payable to proprietary providers of hospital services is zero. *Id.* § 9107(a)(1), 100 Stat. 160, codified as amended at 42 U.S.C. § 1395ww(g)(2) (1988).

**3.** Part 405 of Title 20 was transferred into Title 42 in 1977. 42 Fed.Reg. 52,826 (1977).

ty capital, NME's Medicare fiscal intermediary excluded further reimbursement for goodwill from NME's return on equity capital payment.[4] NME appealed the intermediary's decision to the Provider Reimbursement Review Board (PRRB), where it requested that the PRRB certify the sole issue involved, namely, the validity of the 1976 regulation limiting Medicare reimbursement for pre-August, 1970, goodwill, for expedited judicial review pursuant to 42 U.S.C. § 1395oo(f)(1). After determining that it lacked the authority to decide the legal question presented, the PRRB issued the requested certification.

NME timely filed suit against the Secretary in the Central District of California, where the majority of the hospitals at issue in this appeal are located. *See* 42 U.S.C. § 1395oo(f)(1) (1988). The complaint challenged the 1976 regulation on both procedural and substantive grounds. NME claimed that the Secretary had failed to adhere to the notice and comment procedure prescribed by section 553 of the Administrative Procedure Act (APA), 5 U.S.C. § 553, in promulgating the regulation, and that the regulation was inconsistent with congressional intent and arbitrary and capricious in violation of section 706 of the APA, 5 U.S.C. § 706. NME further claimed that, because the 1976 regulation provided for computation of cumulative return on equity capital attributable to goodwill starting from August, 1970, 42 C.F.R. § 413.157(c)(3) (1990), the Secretary had engaged in unlawful retroactive rulemaking. The parties filed cross-motions for summary judgment, and the district court granted the Secretary's motion. This appeal, which is limited to NME's substantive challenges, followed.[5]

## II

■ We review *de novo* the district court's decision regarding the validity of the challenged regulation under section 706 of the APA. *Regents of Univ. of Calif. v. Heckler,* 771 F.2d 1182, 1187 (9th Cir.1985). Our review of the regulation under that section is limited to determining whether the regulation exceeded the Secretary's statutory authority or was arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A), (C) (1988); *Holy Cross Hosp. v. Heckler,* 749 F.2d 1340, 1344 (9th Cir.1984). We will uphold a regulation promulgated pursuant to the Medicare enabling statute, 42 U.S.C. § 1395hh, "so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Holy Cross Hosp.,* 749 F.2d at 1344 (quoting *Mourning v. Family Publications Serv.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973)). Because NME has failed to demonstrate that the 1976 regulation limiting Medicare reimbursement for equity capital investment attributable to goodwill is inconsistent with or contrary to congressional intent, and because we find that the Secretary stated a reasonable, nonarbitrary basis for his action, we conclude that the regulation does not violate section 706 and that the district court's grant of summary judgment to the Secretary on that claim was proper.

### A

■ The Medicare statute authorizes payment to Medicare providers of a reasonable return on equity capital, but does not specify how "equity capital" is to be defined for purposes of such reimbursement. 42 U.S.C. § 1395x(v)(1)(B) (1988). Rather, as we have noted, the statute expressly delegates the task of defining "equity capital" to the Secretary. *Id.* § 1395x(v)(1)(A)–(B). "If Congress has explicitly left a gap for the agency to fill," we will give the

**4.** Under the Medicare system, payments to providers of health care services generally are made through private organizations that act as fiscal intermediaries pursuant to contracts with the Secretary. 42 U.S.C. § 1395h(a) (1988). Intermediaries audit the annual cost reports filed by providers and determine the amount of reimbursement to which each is entitled. 42 C.F.R. § 405.1803 (1990). If a provider is dissatisfied with its intermediary's determination, it may request a hearing before the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo(a) (1988).

**5.** NME's brief does not contest the district court's disposition of its procedural claim.

resulting regulation "controlling weight" unless it is "manifestly contrary to the statute." *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). An examination of the language and legislative history of section 1395x(v)(1)(B) reveals no such contradiction of congressional design.

Both section 1395x(v)(1)(B) and its legislative history indicate Congress's intention that proprietary providers be reimbursed for equity capital investment only to the extent that such investment is used in the furnishing of health care services. Pub.L. 89–713, sec. 7, 80 Stat. 1111 (1966), codified as amended at 42 U.S.C. § 1395x(v)(1)(B) (1988); Conf.Rep. No. 2317, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.C.C.A.N. 3692. Consistent with this legislative mandate, the Secretary has defined Medicare reimbursable equity capital as that portion of the provider's investment "related to patient care," including "net working capital maintained for necessary and proper operation of patient care activities." 31 Fed.Reg. 14,816 (1966), codified as amended at 42 C.F.R. § 413.157(c)(1)(i)-(ii) (1990). Accordingly, in order to determine whether the imposition of a cap on Medicare reimbursement for goodwill is "manifestly contrary to the statute," we must ascertain the extent to which goodwill is related to patient care. That task is made infinitely simpler by the Secretary's 1970 decision to eliminate Medicare reimbursement for goodwill entirely for post-August, 1970, acquisitions of proprietary health care facilities. The 1970 regulation clearly represents a determination that goodwill is unrelated to the delivery of patient care services.[6] Given that conclusion by the agency charged with administering the Medicare statute, the 1976 regulation phasing out return on equity attributable to goodwill for pre-August, 1970, acquisitions does not frustrate congressional intent, but rather constitutes a reasonable and prudent attempt to limit Medicare

expenditures to those authorized by Congress.

Congress' failure to amend section 1395x(v)(1)(B) in response to the 1970 and 1976 regulatory changes affecting Medicare reimbursement for goodwill lends further support to our conclusion that the 1976 regulation is reasonably related to the purpose of the Medicare statute. We recognize that congressional inaction alone does not necessarily signify congressional approval of administrative pronouncements. *Cook Inlet Native Ass'n v. Bowen,* 810 F.2d 1471, 1476 (9th Cir.1987). Where Congress has reenacted or amended a statute in the interim, however, "congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974) (footnote omitted); *see also Holy Cross Hosp. v. Heckler,* 749 F.2d 1340, 1345 (9th Cir.1984). As the Secretary points out, Congress has amended the Medicare statute a number of times since 1970, but has taken no steps to countermand the Secretary's instructions regarding the elimination of goodwill from return on equity capital payments made to proprietary health care providers. If anything, the amendments to the Medicare statute tend to support the Secretary's actions. In 1972, Congress expressly granted the Secretary authority to "provide for the establishment of limits on ... indirect overall incurred costs." Pub.L. No. 92–603, sec. 223(b) (1972), 86 Stat. 1383, 1393, codified as amended at 42 U.S.C. § 1395x(v)(1)(A) (1988). In the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, 100 Stat. 82 (1986), Congress eliminated the return on equity capital payment entirely for proprietary hospitals, *id.* § 9107(a)(1), codified as amended at 42 U.S.C. § 1395ww(g)(2) (1988), and reduced the rate of return payable to extended care facilities by one-third, *id.* § 9107(b)(2), codified as amended at 42 U.S.C. § 1395x(v)(1)(B) (1988). Based on

---

**6.** *See* 41 Fed.Reg. 46,291, 46,292 (1976). The 1970 regulation itself contains no statement of basis and purpose because until 1971 none was

required for Medicare regulations. *See infra* note 8.

the actions that Congress has taken since 1970 as well as those that it has not, it seems to us eminently reasonable to conclude that Congress approves—or at least does not disapprove—of the Secretary's position on pre-August, 1970, goodwill.

▆ NME argues that the bare fact that the Secretary has changed his position on the issue of Medicare reimbursement for pre-August, 1970, goodwill demonstrates that the 1976 regulation is contrary to congressional intent.[7] This argument betrays a fundamental misunderstanding of the nature of the administrative process and of the function of judicial review of agency rulemaking. The essence of the administrative process lies in the balancing of competing interests to produce reasoned, yet politically responsive policy choices. "An initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis." *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 863–64, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694 (1984). It is not our function to second-guess the agency that Congress has charged with administering a statute merely because a party that has lost a particular round of administrative policymaking would prefer a return to the previous rule, or because the policy arguments rejected by the Secretary strike us as more persuasive. *Id.* at 865–66, 104 S.Ct. at 2792–

93. When Congress has expressly consigned a particular matter to the administrative rulemaking process, the task of the reviewing court is simply to ensure that the agency considered the matter in detail, taking into account all of the evidence before it, and that it reached a reasoned and reasonable decision that does not contradict the terms of its statutory mandate. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). In short, the question is not whether an agency regulation represents a change in policy, but whether it satisfies the standard that applies to all agency rulemaking. *Id.* at 41–42, 103 S.Ct. at 2865–66. If that standard is met, as it is here, we will uphold the agency's decision. For all the foregoing reasons, we are satisfied that the 1976 regulation limiting Medicare reimbursement for pre-August, 1970, goodwill is not contrary to congressional intent.

· B

▆ We are equally satisfied that the 1976 regulation is not "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A) (1988). In order to survive judicial review under the "arbitrary and capricious" standard, an agency need only "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice

---

7. All of the cases upon which NME relies for the proposition that Congress intended "full reimbursement" for pre-August, 1970, goodwill were appeals from administrative adjudications of particular Medicare reimbursement decisions for cost years unaffected by the limit on cumulative allowable reimbursement for goodwill. *Spokane Valley Gen. Hosp. v. Schweiker,* 697 F.2d 848 (9th Cir.1983); *American Medicorp, Inc. (AMI) v. Schweiker,* 690 F.2d 750 (9th Cir. 1982); *Memorial, Inc. v. Harris,* 655 F.2d 905 (9th Cir.1980); *Pacific Coast Medical Enters. (PCME) v. Harris,* 633 F.2d 123 (9th Cir.1980). In none of these cases was the validity of a regulation promulgated by the Secretary in dispute; rather, in each case the parties acknowledged that pre-August, 1970, goodwill was reimbursable and that post-August, 1970, goodwill was not. The central question presented in three of the cases was whether a corporate stock transaction completed before August, 1970, but

also well before the proprietary provider assumed actual physical possession of the facility, constituted an "acquisition" within the meaning of the regulation governing return on equity capital. *American Medicorp, Inc. (AMI) v. Schweiker,* 714 F.2d 68, 70–71 (9th Cir.1982); *Memorial,* 655 F.2d at 909, 912–13; *PCME,* 633 F.2d at 132–33. In *Spokane Valley,* 697 F.2d at 850, we held that "acquisition" by lease gives rise to an entitlement to Medicare reimbursement for goodwill. The cases relied upon by NME tell us a great deal about the application of the return on equity capital regulation to complex financial transactions when all parties agree in principle that the goodwill component of pre-August, 1970, "acquisitions" is reimbursable, but nothing at all about the presumptions that apply when the agency has determined that continued Medicare reimbursement for goodwill would be inconsistent with the terms of the Medicare statute.

made.'" *State Farm*, 463 U.S. at 43, 103 S.Ct. at 2866 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)). We find the record of the rulemaking proceeding in this case clearly sufficient to support the Secretary's decision.

The preamble to the 1976 regulation states that unlimited recognition of goodwill for pre-August, 1970, acquisitions is inconsistent with the Secretary's 1970 determination that goodwill is unrelated to patient care. 41 Fed.Reg. 46,291 (1976). We do not see how this conclusion could be described as unreasonable. Indeed, it appears that the Secretary's decision to allow proprietary Medicare providers to recoup a one hundred percent rate of return on their pre-August, 1970, investments in goodwill is a generous one. In light of his prior conclusion that goodwill is unrelated to the provision of health care services, it would have been equally reasonable—perhaps even more so—to eliminate Medicare reimbursement for pre-August, 1970, goodwill altogether.[8]

The second major justification advanced in support of the 1976 regulation is that "unlimited recognition of goodwill is contrary to present accounting opinion that goodwill has a limited life." 41 Fed.Reg. 46,291 (1976). NME concedes this general proposition, but contends that the precise form of the limitation adopted in the 1976 regulation constitutes a departure from generally accepted accounting principles (GAAP) and is therefore arbitrary and capricious *per se*. This argument misconceives the extent of the discretion afforded the Secretary to determine principles of

cost accounting under the Medicare statute. The statute requires only that the Secretary "*consider, among other things,* the principles generally applied by national organizations" in determining the reasonable cost of health care services. 42 U.S.C. § 1395x(v)(1)(A) (1988) (emphasis added). We have consistently recognized the Secretary's authority to prescribe cost accounting regulations that depart from GAAP "when these practices do not accurately reflect the cost of patient care, as opposed to the cost of running a business." *North Clackamas Community Hosp. v. Harris*, 664 F.2d 701, 706 n. 16 (9th Cir.1980); *see also National Medical Enters. v. Bowen*, 851 F.2d 291, 294 (9th Cir.1988); *Villa View Community Hosp. v. Heckler*, 720 F.2d 1086, 1093 n. 18 (9th Cir.1983). Accordingly, even if the 1976 regulation were inconsistent with GAAP, we would decline to invalidate it on that ground. However, it is by no means clear that NME is correct regarding the alleged inconsistency. The rulemaking record documents the lack of consensus among accounting experts regarding the amortization of goodwill and other intangibles, and notes the opinion of the Accounting Principles Board that " 'the end of the useful life *must necessarily be set arbitrarily* at some point or within some range of time for accounting purposes.' " 41 Fed.Reg. 46,292 (1976) (quoting Accounting Principles Board Opinion No. 17 (1970)) (emphasis added). Given that an element of arbitrariness is inherent in the process of defining the useful life of goodwill, the Secretary's decision to define that life by reference to the statutorily

---

8. NME argues that we may not consider the 1970 regulation eliminating reimbursement for goodwill for post-August, 1970, acquisitions when determining whether the 1976 regulation is reasonable and nonarbitrary, because the 1970 regulation did not contain the "concise general statement of basis and purpose" required by the APA. 5 U.S.C. § 553(c) (1988). As we explained in *Holy Cross Hospital v. Heckler*, 749 F.2d 1340 (9th Cir.1984), however, the APA explicitly exempts rulemaking relating to "benefits" from the "basis and purpose" requirement, 5 U.S.C. § 553(a)(2) (1988), and this exemption extends to Medicare regulations. 749 F.2d at 1346 (citing *Good Samaritan Hosp. v.*

*Mathews*, 609 F.2d 949, 953–54 (9th Cir.1979); *Humana of South Carolina v. Califano*, 590 F.2d 1070, 1082–84 (D.C.Cir.1978)). Although the Secretary elected to waive the benefits exemption in 1971, 39 Fed.Reg. 2532, "regulations issued prior to the 1971 waiver remain exempt." 749 F.2d at 1346. Accordingly, the 1970 regulation eliminating Medicare reimbursement for goodwill for post-August, 1970, acquisitions cannot be invalid for failure to incorporate a statement of basis and purpose. Because counsel for NME represented the appellants in *Holy Cross Hospital*, we find his argument to the contrary frivolous and his failure to cite that case disturbing.

established rate of return on equity capital is not an unreasonable one.

## III

■ Finally, we conclude that the Secretary's regulation does not violate any rule relating to retroactivity. Neither the Medicare Act nor the APA authorizes retroactive rulemaking. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 474–75, 102 L.Ed.2d 493 (1988); *id.* 109 S.Ct. at 475–76 (Scalia, J., concurring). Thus, had the Secretary in 1976 eliminated Medicare reimbursement for goodwill and then proceeded to recoup return on equity capital payments attributable to goodwill made during previous cost years, we would be required to strike down the regulation authorizing that course of action. However, as to the regulation that the Secretary did issue in 1976, the charge of unlawful retroactivity is meritless. The 1976 regulation phasing out Medicare reimbursement for goodwill did not "alter[ ] the *past* legal consequences of past actions." *Id.* 109 S.Ct. at 477 (Scalia, J., concurring) (emphasis in original). It merely provided that *at some future date*, when the cumulative return on goodwill paid to a Medicare provider since August 1, 1970, reached one hundred percent, reimbursement for goodwill would cease. Because the Medicare Act established a uniform statutory rate of return on equity capital, Medicare reimbursement for goodwill ceased for all providers at some point during 1980. In 1976, the one hundred percent limit was clearly "prospective", or "of future effect", as required by statute. H.R.Rep. No. 231, 92d Cong., 2d Sess. (1971) (discussing the extent of the Secretary's authority to set cost limits for Medicare reimbursement), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5070; 5 U.S.C. § 551(4) (1988) (defining a rule for purposes of the APA).

The 1976 regulation undeniably affected the *future* legal consequences of past transactions, but such " 'secondary' retroactivity" is an entirely lawful consequence of much agency rulemaking and does not by itself render a rule invalid. *Georgetown Univ. Hosp.*, 109 S.Ct. at 477

(Scalia, J., concurring) (quoting McNulty, *Corporations and the Intertemporal Conflict of Laws*, 55 Cal.L.Rev. 12, 58–60 (1967)). Justice Scalia suggested that a rule with "unreasonable secondary retroactivity" may be arbitrary and capricious in violation of the APA, and offered the example of a rule "that makes worthless substantial past investment incurred in reliance upon the prior rule." *Id.* We express no opinion as to whether and when a rule with substantial secondary retroactivity would be invalid for that reason. Whatever the criteria for "unreasonable secondary retroactivity" might be, they are not met here. A rule that limits the cumulative allowable return on one component of a Medicare provider's equity capital investment to one hundred percent clearly does not render that investment worthless, nor does it prevent the provider from recouping its investment through sale or lease of the facility. Accordingly, NME's claim that the 1976 regulation limiting cumulative allowable Medicare reimbursement for goodwill is unlawfully retroactive fails.

The judgment of the district court is AFFIRMED.