PUBLIC HOSPITAL DISTRICT NO. 1, GRANT COUNTY, WASHINGTON, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. CS–92–0160–WFN.

United States District Court, E.D. Washington.

July 23, 1992.

---

Anita D. Lee, Los Angeles, Cal., Paul L. Ahern, Bellevue, Wash., for plaintiff.

Carroll Gray, Asst. U.S. Atty., Spokane, Wash., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WM. FREMMING NIELSEN, District Judge.

Before the Court are the parties' cross Motions for Summary Judgment, Ct.Recs. 14 and 25. Plaintiff is a public health district which operates Samaritan Hospital, a 50–bed acute care hospital in Moses Lake, Washington. Samaritan is certified as a provider of services in the federal Medicare program. Defendant is the federal officer responsible for the administration of Medicare. Jurisdiction is proper under Title

XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc and 1395oo(f)(1). Venue is proper under 42 U.S.C. § 1395(f)(1). After review of the file, the administrative record, memoranda submitted by the parties, oral argument and Plaintiff's objections to the Report and Recommendation, Plaintiff's Motion for Summary Judgment is DENIED; Defendant's Motion for Summary Judgment is GRANTED.

The Medicare statutes, 42 U.S.C. § 1395–1395ccc, established a federally funded system of health insurance for the aged and disabled. Samaritan entered into a written agreement with Defendant to provide hospital services to eligible Medicare patients in exchange for reimbursement by Defendant. In conjunction with its claim for payment, Samaritan applied on October 25, 1985 for designation as a sole community hospital ("SCH") based upon its assertion substantially all of its staff physicians admitted their patients to Samaritan, and the hospital was more than twenty-five miles away from the next closest hospital with comparable service. (S.Tr.[1] at 1, 7 and 57.) The Health Care Financing Administration (HCFA), which administers the Medicare payment program, denied Samaritan's request to be designated an SCH for the fiscal years ending December 31, 1985 and 1986.[2] (S.Tr. at 4.) In its findings, HCFA noted there were several hospitals within relevant proximity to Samaritan.[3] (S.Tr. at 60.) Based on these facts, HCFA found Samaritan failed to establish the necessary criteria of 42 C.F.R. § 412.92(a)(3): "[B]ecause of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year."

On May 5, 1986, Samaritan appealed the adverse decision to the Providers Reimbursement Review Board (PRRB), contending 42 C.F.R. § 412.92(a)(3) is inconsistent with the enabling statute 42 U.S.C. § 1395ww(d)(5)(C)(ii) and congressional intent. (S.Tr. at 3.) The PRRB granted a request for review[4] (S.Tr. at 2.) and on April 22, 1991, a complaint was filed in this court. On September 18, 1991, Plaintiff moved for summary judgment. (Ct.Rec. 14.) On March 9, 1992, Defendant filed a cross Motion for Summary Judgment. The Motions were submitted to this court on May 11, 1992.

In its Motion for Summary Judgment, Plaintiff admits Samaritan does not meet the regulatory criteria required for designation as an SCH. Samaritan does not contest any factual finding that supported the denial. Rather, it contends the applicable regulation, 42 C.F.R. § 412.92(a)(3) is invalid for two reasons: (1) The criteria in (a)(3) are considerably more restrictive than the criteria previously applied, rendering the regulation inconsistent with congressional intent; and (2) the Secretary failed to articulate a rationale for choosing the more restrictive criteria in violation of the Administrative Procedure Act, 5 U.S.C. § 705, *et seq. See Motor Vehicle Manufacturers Ass'n v. State Farm Mutual,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In response, Defendant asserts the regulation is valid because it was promulgated by the Secretary within the congressional guidelines.

## PRE–1983 BACKGROUND

Reimbursement of expenses incurred by Medicare patients is available to provider hospitals under Part A of the Medicare

---

1. "S.Tr." denotes the supplemental transcript.

2. The effect of the denial on reimbursement to Samaritan was approximately $56,000 for each year. (Tr. at 54.)

3. Located within 25 miles of Samaritan is Columbia Basin Hospital, a 29–bed general acute care hospital approximately 21 miles or 23 minutes from Samaritan. There are three other hospitals more than 25, but less than 50 miles from Samaritan. They include Othello Hospital, 46 beds, 25.3 or 27 minutes from Samaritan;

Quincy Valley Hospital, 16 beds, 39 miles or 43 minutes from Samaritan; and Ritzville Memorial Hospital, 20 beds, 46 miles or 50 minutes from Samaritan. (Ct.Rec. 26.)

4. The PRRB is bound by the Medicare Act, its regulations and formal HCFA rulings. 42 C.F.R. § 405.1867. It has no authority to review the validity of a statute or regulation. Any such issue is granted expedited judicial review in the federal district court. 42 C.F.R. § 405.1842.

program. Since Medicare's inception, two payment systems have been utilized to provide payment to hospitals. The first, in existence from 1965 to 1983, provided reimbursement to the hospital for the lesser of either the reasonable cost or customary charge incurred. 42 U.S.C. § 1395f(b). The regulations set specific limits on costs and also provided for certain exemptions to those limits, including hospitals that qualified as an SCH. 42 C.F.R. § 405(e)(1). The exemption was in recognition of congressional intent that cost limitations,

> [W]ill not be applicable where there is only one hospital in a community—that is, where, if the provision were applied, additional charges could be imposed on beneficiaries who have no real opportunity to use a less expensive NON–LUXURY institution, and where the provision would be difficult to apply because COMPARATIVE cost data for the area are lacking.

H.R.Rep. No. 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4989, 5070. An SCH was then defined by the Secretary as a "hospital, by reason of factors such as isolated location or absence of other hospitals, is the sole source of such care reasonably available to beneficiaries." 42 C.F.R. § 405.460 (1980). Subsequently in 1982, Congress expressly authorized the Secretary to create the SCH exemption by amending 42 U.S.C. § 1395ww(a)(2)(A). That amendment did not specify any particular factors the Secretary was to consider in defining an SCH. However, Intermediary Letters ("I.L.") were issued by the HCFA for use by their regional offices discussing various factors that were to be considered in determining SCH status. I.L.[5] No. 74–22 (July, 1974) stated in pertinent part:

> The determination that a hospital is the sole source of hospital services reason-

ably available to beneficiaries is based on such factors as (1) the normal commuting distance to work for residents of the locality served by the hospital, (2) travel time and availability of public transportation to the nearest like facility, and (3) the extent to which persons travel to other localities for hospital care.

The letter further provided "[g]enerally, ... a hospital located within a 25–mile radius of a like facility ... [cannot] be found to qualify for a sole community hospital exemption." *Id.* A subsequent letter, I.L.[6] 78–17 (April, 1978), identified certain other factors which should be considered in addition to isolation:

> [P]hysical isolation of the hospital and its service area, as demonstrated by the absence of reasonably accessible like facilities, or isolation of the hospital and its service area due to unusual local circumstances which results in general nonuse of the otherwise closest like facilities by residents in the hospital's service area is the key factor to a determination that a hospital is [an SCH] within the meaning of regulations.... Examples of unusual local circumstances include, but are not limited to, adverse topographical conditions, extended periods of adverse weather conditions, and *hospital admitting patterns* of physicians in practice in the hospital's service area. (Emphasis added.)[7]

Based upon these administrative definitions, approximately 277 SCH hospitals were approved. (R.R.[8] at 7.) Those hospitals that were not approved found some relief in the courts which overturned on several occasions the Secretary's decision to deny them SCH status. *See St. Elizabeth Community Hospital v. Heckler*, 745 F.2d 587 (9th Cir.1984); *Graham Hosp. Ass'n v. Heckler*, 739 F.2d 285 (7th Cir.

---

**5.** See 131 Medicare and Medicaid Guide (CCH) ¶ 27,044 (Aug. 20, 1974).

**6.** See 234 Medicare and Medicaid Guide (CCH) ¶ 28,972 (May, 1978).

**7.** These guidelines led to some variation in the specific criteria utilized by each regional office in its determination of SCH status. Examples include differences in the application of criteria

related to distances between hospitals, utilization patterns, travel time and the definition of "service area" of a hospital. (R.R. at 8.) There were also reports of problems with the 25 mile rule and terms such as "special circumstances," "like facility" and "community." (R.R. at 9.)

**8.** "R.R." denotes Rulemaking Record.

1984); *Central Wash. Health Serv. Ass'n v. Harris*, 497 F.Supp. 1143 (E.D.Wn.1980).

## BACKGROUND: POST–1983

In 1983, Congress adopted the second payment system which eliminated retroactive reimbursement and substituted a prospective payment system ("PPS"). PPS pays the provider a fixed amount for each Medicare patient based upon a discharge or patient diagnosis classified by national or regional diagnosis-related groups ("DRG"). PPS was implemented over four years during which an increasing portion of the provider's payment rate was based upon the regional or national rate per DRG.[9] 42 U.S.C. § 1395ww(d)(1)(A), amended by 42 U.S.C. § 1395ww(d)(1)(C). Beginning October 1, 1987, payment was to be made only under the PPS system. PPS allows hospitals to plan more accurately for the future and creates incentives for hospitals to operate in a more cost efficient manner. Hospitals are allowed to keep the payments made in excess of expenses and must absorb the costs incurred in excess of payments. S. Rep. No. 23, 98th Cong., 1st Sess., *reprinted* in 1983 U.S.C.C.A.N. 143, 187.

Because of the negative impact of PPS on inefficiently managed hospitals, Congress recognized those hospitals would be forced to close and patients would have to seek care elsewhere. The adverse impact on patients would be minimal except in the instance of an SCH. Therefore, once again, such hospitals were allowed to operate on a blended system, set in 1983 at 75% reimbursement of the hospital's specific costs and 25% prospective payment.[10] 42 U.S.C. § 1395ww(d)(5)(C)(ii).

Recognizing the lack of a statutory definition of SCH, the 1983 amendments included one at 42 U.S.C. § 1395ww(d)(5)(C)(ii):

For purposes of this subparagraph, the term "sole community hospital" means a hospital that, by reason of factors such

as isolated location, weather conditions, travel conditions, or absence of other hospitals (*as determined by the Secretary*), is the sole source of inpatient hospital services reasonably available to individuals in a geographical area who are entitled to benefits under part A [42 U.S.C. §§ 1395c, *et seq.*]. (Emphasis added.)

The underlined parenthetical phrase and other statutory language grants to the Secretary express authority to create regulations to further define and apply the factors enumerated by Congress. *Central Oregon Hospital Dist. v. Sullivan*, 757 F.Supp. 1134, 1137 (D.Or. 1991); *see also* 42 U.S.C. § 1395hh; 42 U.S.C. § 1395ww(a)(2)(A); 42 U.S.C. § 1395ww(d)(5)(C)(ii).

In response to the grant of authority, the Secretary published interim final rules with a subsequent public comment period. 48 Fed.Reg. 39,752 (1983). A caveat in the interim rules noted:

A hospital will be classified as an SCH for purposes of the prospective payment system and receive payment adjustments if the hospital has an approved exemption from hospital cost limits ... as an SCH prior to October 1, 1983. However, if there is a change in circumstances affecting this classification under the cost limits, the classification for purposes of adjustments under prospective payment will be reevaluated in accordance with other criteria explained below.

48 Fed.Reg. 39,780 (1983) (Tr. at 5.) Thus, those hospitals designated SCH prior to the 1983 amendments retained their designation, unless a change of circumstances occurred under the pre-1983 factors. In that event, the hospital would be reevaluated under the new criteria that did not include physician admitting practices and market share if the other hospitals were closer than 25 miles.[11] It does not appear from

---

**9.** Defendant's brief indicates a three year transition period occurred. However, the relevant statute appears to have been amended to include a fourth year of transition in 1986–87. 42 U.S.C. § 1395ww(d)(1)(C), as amended.

**10.** That rate has since been amended, but the amendment is not at issue here.

**11.** This interpretation is reinforced in 54 Fed. Reg. 36,480 where the Secretary refers to the reluctance of some hospitals to give up their SCH status, even though it may be financially

the record Samaritan was designated an SCH prior to the 1983 amendments. The rules became final and were codified at 42 C.F.R. § 412.92.[12] The regulations provided during the applicable fiscal years:

(a) *Criteria for classification as a sole community hospital.* HCFA classifies a hospital as a sole community hospital if it is located in a rural area (as defined in § 412.62(f)), and meets one of the following conditions:

(1) . . . [not applicable].

(2) The hospital is located between 25 and 50 miles from other like hospitals and meets one of the following criteria:

(i) No more than 25 percent of the residents or, if data on general resident utilization are not available, no more than 25 percent of the Medicare beneficiaries in the hospital's service area are admitted to other like hospitals for care;

(ii) The hospital has less than 50 beds and the PSRO or intermediary certifies that the hospital would have met the criteria in paragraph (a)(2)(i) of this section were it not for the fact that some beneficiaries or residents were forced to seek care outside the service area due to the unavailability of necessary specialty services at the community hospital; or

(iii) Because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.

(3) The hospital is located between 15 and 25 miles from other like hospitals but because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.

Inaccessibility for one month was further defined as 30 consecutive days. 48 Fed. Reg. 39,781 (1983). It is only the third

category, 42 C.F.R. § 412.92(a)(3), that is challenged by Plaintiff.

### STANDARD OF REVIEW

The Medicare Act provides for review of a final Medicare decision under the Administrative Procedure Act ("APA"). 42 U.S.C. § 1395oo(f)(1); 5 U.S.C. § 706(2)(A); *St. Elizabeth Community Hospital,* 745 F.2d 587, 591 (9th Cir.1984). Under the APA, an agency's determination will be overturned if it is arbitrary, capricious, inconsistent with governing law, or unsupported by substantial evidence. 5 U.S.C. § 706. Judicial review of an agency regulation proceeds under the rule announced in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The court must first determine if Congress has addressed the precise question at issue (what is an SCH?). That question is answered by reviewing the statute's language, history and purpose. If congressional intent is clear, this court must give effect to that intent. If it is not clear, this court must then decide if the regulation "is based on a permissible construction of the statute." *Chevron,* at 843, 104 S.Ct. at 2782; *see also Community Hospital of Chandler v. Sullivan,* 963 F.2d 1206 (9th Cir.1992). An agency regulation is entitled to deference unless it is arbitrary, capricious, or manifestly contrary to the statute. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. *See also Rust v. Sullivan,* —— U.S. ——, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), *Pauly v. Bethenergy Mines Inc.,* —— U.S. ——, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991), *National Medical Enterprises v. Sullivan,* 957 F.2d 664 (9th Cir.1992). The Supreme Court further noted that when Congress explicitly delegates authority to the Secretary to define terms in the Medicare program, the Secretary's definitions, when subject to judicial review,

---

advantageous for them to do so, since requalification will occur only under the regulations in effect at the time the hospital applies for reinstatement as an SCH. (Tr. at 495.) *See also* 49 Fed.Reg. 271 (1984) regarding preexisting SCH status.

**12.** The regulation was redesignated 42 C.F.R. § 412.92, without substantive change in 1985. Since 1985, the statute has been amended, but those amendments are not applicable to fiscal years 1985 and 1986 at issue here.

are entitled to "legislative effect." *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981); *Central Oregon Hosp. Dist.,* 757 F.Supp. at 1137.

## ISSUE NO. 1

Is 42 C.F.R. § 412.92(a)(3) impermissibly restrictive and inconsistent with congressional intent?

■ Plaintiff argues the regulation is impermissibly restrictive and inconsistent with the enabling statute because the determining factors of (a)(3) are based solely on location and travel impediments. To that extent, it is argued, the regulation is not consistent with congressional intent, citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Plaintiff also contends the use of illustrative language ("such as") and certain terms ("isolated location" and "absence of other hospitals" designated terms of art in pre–1983 cases) create an ambiguity. Thus, other unspecified factors such as physician admission practices and market share incorporated in 42 C.F.R. § 412.92(a)(2), are inferentially part of (a)(3).

Defendant responds the statutory language is clear and unambiguous when the terms are given their ordinary meaning, citing unpublished cases.[13] Under Local Rule 7(g)(2), unpublished decisions may not be cited as authority and are not binding on this court.

The Medicare statute authorizes the Secretary to promulgate regulations that apply the definition of SCH established by Congress. 42 U.S.C. § 1395hh. If Congress has explicitly left a gap for the agency to fill, the regulation is given "controlling weight," unless it is "manifestly contrary to the statute." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782; *National Medical,* 957 F.2d at 668. The validity of subsection (a)(3) has been challenged on prior occasions with conflicting results.[14]

Thus, these decisions are not binding on this court.

In *Central Oregon,* 757 F.Supp. at 1140, the court reviewed the legislative history of 42 U.S.C. § 1395ww as reported in S.Rep. No. 23, 98th Cong., 1st Sess. 54, *reprinted in* 1983 U.S.C.C.A.N. 143. The court noted comments by the committee that it "expects" the Secretary to "develop and take into account a much broader range of factors" than those existing prior to 1983. The court noted factors such as physician admission practices and market share were included in (a)(2) of the statute but not in (a)(3). Therefore, (a)(3), standing alone, was arbitrary and capricious. *Central Oregon,* at 1141. The court then discussed whether the policy change implicit in (a)(3) was supported with a reasoned analysis and held it was not. *Central Oregon,* at 1143; *see also Mary Imogene Bassett Hospital v. Bowen,* 588 Medicare & Medicaid Guide (CCH) ¶ 37,831, 1989 WL 265474 (N.D.N.Y.1989) (holding regulation was invalid).

In contrast, Defendant relied on *Fitzgibbon* which reached the opposite result. There, the plaintiff argued the regulation was invalid because the Secretary failed to provide a reasoned analysis for changing the criteria from the pre–1983 factors, citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The court rejected that argument, concluding the rule of *Motor Vehicle* applied only to regulations that were dramatically changed while the underlying statute remained substantially unchanged. *Fitzgibbon* noted the 1983 amendments dramatically changed the Medicare payment scheme and specifically authorized the Secretary to promulgate regulations in conformance with the factors enumerated by Congress. Moreover, even if the Secretary were required to provide reasons for the change in the regulations, an adequate ra-

---

**13.** *John Fitzgibbon Memorial Hospital v. Sullivan,* No. 90–01790CV–W–3, 1991 WL 438315 and *Gentry County Memorial Hospital v. Sullivan,* No. 90–6089–CV–W–3, (D.Mo., Dec. 11, 1991).

**14.** Plaintiff cites *St. Elizabeth Community Hospital,* 745 F.2d at 594. However, since it was decided on pre–1983 criteria, it has limited applicability to the issue at bar.

tionale existed as evidenced by the Secretary's response to comments in 49 Fed.Reg. 271 (1984). The court noted the congressional record of debate surrounding the passage of the 1983 amendments was ambiguous as to the objectives the Secretary was to achieve. On the one hand, Congress wanted a uniform objective standard; yet Congress indicated the Secretary should develop a much broader range of factors. The court upheld the Secretary's regulations based upon the Secretary's comment the regulations met both criteria: they were based upon objective criteria while taking into consideration local conditions. 53 Fed.Reg. 19,517–518 (1988). *See also Clinton Memorial Hospital v. Sullivan,* 783 F.Supp. 1429 (D.D.C.1992) (finding regulation was valid); *A.O. Fox Memorial Hospital v. Sullivan,* [1990 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 38,-364, 1989 WL 153730 (N.D.N.Y.1989).

 In determining whether a contested regulation conforms to congressional intent, the court must determine if the language of the regulation is consistent with the language of the underlying statute. *K Mart v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). Moreover, in construing a federal statute, the language used will be given its ordinary meaning. *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985).

Plaintiff first contends the terms "isolated location" and "absence of other hospitals" become superfluous and redundant when given their ordinary meaning. An isolated location infers the absence of other hospitals. Thus, Plaintiff concludes this court must look to the legislative history to resolve the ambiguity. However, a review of the legislative history does not address that particular language. Rather, the ambiguity is resolved by a review of the factors listed in the Secretary's regulation. "Absence of other hospitals" refers to the

mileage separating neighboring hospitals; "isolated location" refers to the inaccessibility due to weather and travel conditions. Therefore, this court concludes each term, when given its ordinary meaning, does not result in redundant or superfluous language.

Plaintiff next argument that the regulation contains terms of art is unpersuasive. *See Central Oregon,* at 1141. The statute clearly lists the factors that are to be considered and those factors have been incorporated into the Secretary's regulation. Thus, the statutory language is clear and there is no reason to review the legislative history to determine congressional intent. *I.N.S. v. Cardoza–Fonseca,* 480 U.S. at 432, n. 12, 107 S.Ct. at 1213, n. 12; *Clinton,* 783 F.Supp. at 15. Finding an ambiguity based upon the legislative history puts "the cart before the horse." *Clinton,* at 15.

Plaintiff, relying on *Public Citizen v. Department of Justice,* 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1988), argues legislative history should be examined even if the statute does not present an ambiguity on its face. In *Public Citizen,* at 455, 109 S.Ct. at 2566, the Court stated: "Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" Plaintiff then argues legislative history demonstrates Congress' intent that the Secretary utilize more expansive criteria in defining an SCH. S.Rep. No. 23, 98th Cong., 1st Sess. 54, *reprinted in* 1983 U.S.C.C.A.N., 143, 194.[15] Thus, the rigid, narrow criteria of 42 C.F.R. § 412.92(a)(3) are contrary to congressional intent. However, looking at the entire regulatory scheme, other sections do contain factors other than mileage and accessibility. *See* 42 C.F.R. § 412.-

---

**15.** The Senate Report notes:

The committee is concerned that, in determining which hospitals have been eligible for exceptions and adjustments as sole community providers in the past, the Secretary has applied different criteria in the different regions of the country, including some which are very narrow

and restrictive. Therefore, the committee expects that the Secretary, in making such determinations for sole community providers under the new prospective payment system, will develop and take into account a much broader range of factors relating to beneficiary access to basic hospital services.

92(a)(1) and (a)(2). There is no expressed congressional intent that additional factors must be considered in all sections of the regulation, especially when the regulation adopts the specific factors enumerated in the statute (isolated location, weather conditions, travel conditions or absence of other hospitals). Thus, the language of the Senate report does not persuade this Court that the regulation is inconsistent with congressional intent.

Next, this court must determine whether the regulation promulgated by the Secretary is arbitrary, capricious or in conflict with the statute. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782; *National Medical Enterprises,* 957 F.2d at 668. Review under the standard of arbitrary and capricious is narrow.

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle,* 463 U.S. at 43, 103 S.Ct. at 2867. None of those criteria are met here. 42 C.F.R. § 412.92(a)(3) does not consider any factors not listed in the statute, nor does (a)(3) fail to consider an important aspect of the problem. It addresses the issue of inaccessibility under both objective criteria and local conditions (weather and/or topography) which may otherwise impact the presumption of accessibility which arises because of the short distance. The regulation also conforms to the intent of the drafters' "basic conclusion ... was that hospitals within 25 miles of another hospital were not isolated at all, and were not the only hospitals reasonably available to Medicare beneficiaries, unless seasonal events such as highways blocked with snow for a protracted period of time made them the only hospitals available." *Cen-*

*tral Oregon,* at 1142. This court concludes the regulation is not manifestly contrary to the statute.

### ISSUE NO. 2

Did the Secretary fail to articulate a rationale for choosing the more restrictive criteria in violation of the Administrative Procedures Act (APA)?

■ Plaintiff contends the regulation is also in violation of the APA since the Secretary failed to articulate a satisfactory explanation for his action, citing *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866. Plaintiff argues since (a)(3) uses criteria that are more narrow than required by the statute, the Secretary was obligated to articulate reasons for the departure. This argument was made and rejected in *Clinton.* In *Clinton,* at 17, the court noted *Motor Vehicle* was not applicable because the underlying statute had changed dramatically rather than remaining in repose. Thus, the Secretary was not involved in issuing a fundamentally different rule or regulation while the underlying statute remained unchanged.[16] This court adopts that reasoning, finding the underlying statute was dramatically changed and, thus, the rule of *Motor Vehicle* does not come into play.

Plaintiff also argues the Secretary failed to consider relevant criteria, including a report by the Task Force on Sole Community Hospital Exemptions ("Task Force") and a relevant General Accounting Office ("GAO") Report. The Task Force recommended SCH status be based on hospital admissions policy; it rejected mileage as a basis. (R.R. at 18.) The GAO Report recommended the terms in the Intermediary Letters be more objectively defined so that they could be more uniformly applied by the regional offices. (R.R., Att. D., at 2.) No mention was made of mileage as a factor, except for a statement the applications were being routinely denied based solely on mileage without consideration of the other factors mentioned in the Intermediary Letters. (R.R., Att.D., at 7.)

---

**16.** Moreover, *Clinton* noted that even if the Secretary were obligated to provide an explanation, one was provided at 49 Fed.Reg. 271 (1984), where the Secretary stated his intent was to

institute objective regulations to promote uniformity throughout the nation in designating hospitals as an SCH.

■ This argument must be rejected, for Congress had an opportunity to reject mileage as the determinative factor during three different amendment procedures that occurred subsequent to the adoption of the regulation. If Congress has an opportunity to amend and does not amend[17], its failure to revise or repeal an agency's interpretation is persuasive to the court the interpretation is correct. *National Medical Enterprises*, 957 F.2d at 668.

■ Plaintiff also contends the regulation is arbitrary on its face since it would be impossible for any hospital to show inaccessibility for thirty consecutive days for three years. However, there is no requirement imposed by the statute effective in 1986 that inaccessibility be shown for three years, as acknowledged in Plaintiff's Reply Brief, at 2.[18]

*Central Oregon*, at 1143, noted:

Plaintiff further argues that § 412.-92(a)(3) sets a standard which is virtually impossible to satisfy. Plaintiff contends that only nine roads in the continental United States are closed for thirty consecutive days each year and most of these roads run through national parks or wilderness areas, rather than between hospitals. The Koch affidavit makes reference to one contact between the HCFA staff and a hospital "which said it was within 25 miles of another hospital but was inaccessible because roads were closed due to snow." ... It is difficult to see how this single contact allowed the Secretary to make a "rational connection between the facts found and the choice made." *Burlington Truck Lines [v. United States*, 371 U.S. 156 (1962) ], at 168 [83 S.Ct. 239, at 246, 9 L.Ed.2d 207].. . .

However, it is this court's view Congress intended that hospitals located within twen-ty-five miles of each other could not qualify for SCH status, except in one extremely limited circumstance involving road closures. There is substantial evidence to support the Secretary's finding Samaritan does not qualify for SCH status, since Samaritan has failed to demonstrate Columbia Basin Hospital in Ephrata is inaccessible for at least thirty consecutive days because of road closures on State Highway 17. (Tr. at 10.) Furthermore, the parties have stipulated Columbia Basin Hospital is accessible by public transportation. (Tr. at 23.) Accordingly,

1. Plaintiff's Motion for Summary Judgment is DENIED; Defendant's Motion for Summary Judgment is GRANTED.

2. The decision of the PRRB denying Samaritan SCH status is AFFIRMED.

3. The Clerk is hereby DIRECTED to enter this Order. and forward copies to counsel and to CLOSE THIS FILE.

---

**17.** Plaintiff correctly notes in its objection to the magistrate judge's Report and Recommendation, that Congress added a requirement of travel time in 1991. 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II) and (D)(iv) (1991). However, the additional requirement does not contradict the previous requirements of mileage and inaccessibility due to travel conditions. Thus, Congress continues to ratify distance as a legitimate factor.

**18.** In its objections to the Report and Recommendation, Plaintiff now asserts the three year requirement was imposed by the Secretary's comments in the preamble to the Interim final rule found in 48 Fed.Reg. 39752, 39781 (Sept. 1, 1983). Whether the three year requirement was applicable will not be addressed since Plaintiff was unable to meet the inaccessibility requirement for any year.