655 F.2d 905
 MEMORIAL, INC., dba Memorial Hospital of Panorama City, a
Delaware Corporation, Plaintiff-Appellee,
v.
Patricia HARRIS,* Secretary of the United States
Department of Health, Education and Welfare et
al., Defendants-Appellants.
 No. 78-3169.
 United States Court of Appeals,
Ninth Circuit.
 March 28, 1980.
Rehearing Denied June 23, 1980.
 
 Henry Eigles, Dept. of HEW, Baltimore, Md., for defendants-appellants.
 Steven Gourley (argued), Memel, Jacobs, Piernio & Gersh, Los Angeles, Cal., on brief; Arthur R. Chenen, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court For the Central District of California.
 Before GOODWIN and TANG, Circuit Judges, and EAST,** District Judge.
 EAST, Senior District Judge:
 This is a companion case to Pacific Coast Medical Enterprises v. Harris, 633 F.2d 123 (9th Cir. 1980), decided today. Here, a limited partnership was formed to become the successor to a corporate Medicare provider. The limited partner obtained the corporation's assets, including goodwill, by a 100 percent stock purchase and subsequent corporate dissolution. The limited partner then contributed these assets to the partnership. Memorial, Inc., dba Memorial Hospital of Panorama City (MHPC), the successor in interest to the limited partnership, claimed the goodwill in stepping up its basis for purposes of Medicare reimbursement claims. MHPC's claims based on this stepped-up basis were denied by the fiscal intermediary and, on appeal, by the Provider Reimbursement Review Board (PRRB or Board). MHPC then sought judicial review in the District Court for the Central District of California. The District Court reversed the decision of the Board, and ordered the Government to cease withholding payments based on these claims. The Court's order covered MHPC's cost reporting year ended in 1973, which had been before the Board, as well as claims for post-1973 cost report years. Petitions for review of pre-1973 cost report year disputes were transferred to the Court of Claims. The Government appeals the judgment and order of the District Court.
 We have determined that the findings and conclusions of the Board are not supported by substantial evidence, and accordingly we affirm the District Court's reversal of the Board's decision. We also affirm the transfer of the pre-1973 years' claims to the Court of Claims. The District Court, however, exceeded its jurisdiction in extending its order to years not before it, and we vacate that portion of the Court's order. Finally, the District Court should not have required a specific formula for the calculation of goodwill, and that portion of its judgment is modified. Affirmed in part as modified, vacated in part, and remanded.
 
 
 1
 * A
 
 
 2
 As in Pacific Coast, this case arises under the Medicare provisions of the Social Security Act.[1] The facts of this action are not in dispute. Prior to September 30, 1968, there existed a corporate Medicare provider known as Memorial Hospital of Panorama City, Inc.[2] (the corporation). This corporation operated a 96 bed proprietary hospital by leasing the land, the building, and a major portion of the equipment from a general partnership known as Panorama Hospital Associates (PHA).
 
 
 3
 On August 14, 1968, a limited partnership was formed composed of one Robert M. Bernstein as general partner and a non-profit corporation called Order of Saint Paul The Pauline Fathers First Hermit (hereinafter OSP) as a limited partner.[3] During the several months prior to September 30, 1968, Mr. Bernstein engaged in a number of discussions with the corporation and with PHA concerning the purchase of the hospital operation. OSP was interested in the operation as a source of revenues to support its church activities, and had previously engaged in business ventures with Mr. Bernstein. Such ventures in the past had also taken the form of limited partnerships.
 
 
 4
 The transfer of the hospital operation to the limited partnership was accomplished by the execution of several agreements, all effective on September 30, 1968:
 
 
 5
 (a) OSP purchased 100 percent of the stock of the corporation for $5,000,000. The agreement required an initial cash payment of $500,000, with the unpaid balance to be paid from the net earnings of the hospital operations according to a specified formula. The unpaid balance was to bear interest at four percent per annum, and the entire balance would be due and owing in any event in 20 years.[4] As provided for in the agreement, with the consent of the seller shareholders, OSP elected to wind up and dissolve the corporation on the stock sale closing date, September 30, 1968, and immediately distributed all assets, liabilities, and operations to itself.
 
 
 6
 (b) OSP purchased from PHA for $4,000,000 the buildings, land, and other assets PHA had leased to the corporation for the operation of the hospital.[5]
 
 
 7
 (c) OSP transferred to the limited partnership, as OSP's capital contribution, all assets and business interests it received by dissolving the corporation, and all the assets it purchased from PHA.[6] The assets from the corporation had a net book value of $452,866.
 
 
 8
 On October 1, 1968, the limited partnership commenced operation of the hospital under a new provider agreement with the Secretary.[7] MHPC, plaintiff below and appellee here, is the successor in interest to the limited partnership.
 
 B
 
 9
 In establishing a value for its equity capital, MHPC has included the goodwill of $4,547,134 obtained in the purchase of the original corporation.[8] MHPC then used this value in determining its Medicare reimbursement claims for return on equity. These claims were denied by the Blue Cross fiscal intermediary, which ruled that the original 100 percent stock purchase and immediate dissolution was not a purchase of assets for purposes of revaluation. This ruling applied a Bureau of Health Insurance policy on this type of transaction as set forth in a document known as the "Wolkstein letter."[9] MHPC appealed this denial, with respect to its 1973 cost reporting year,[10] to the PRRB.
 
 
 10
 The Board affirmed the refusal to allow MHPC to include the goodwill in its equity capital, but for different reasoning than applied by the intermediary. The Board first determined that each transaction involved in the transfer must be viewed separately: the stock purchase, the dissolution, and the transfer to the limited partnership. It characterized OSP's purchase of stock as an investment, and maintained that after the liquidation and transfer of assets to the limited partnership, the investment should have remained on the books of OSP. The Board found that "this same cost was transformed from a cost of investing in common stock to a cost of investing in a Limited Partnership." The Board also noted that the limited partnership did not assume liability for the purchase price of the stock. Finally, it suggested that there might be no fixed obligation to compensate the sellers of the stock because the repayment schedule was tied to the operating profits and amount of working capital.[11] The Board concluded that MHPC was not entitled to include goodwill in its equity capital. MHPC sought judicial review of the Board's decision.
 
 C
 
 11
 The decision of the PRRB constitutes the final decision of the Secretary, and the District Court assumed jurisdiction of the 1973 claim under 42 U.S.C. § 1395oo(f). (The Court ruled it did not have jurisdiction over pre-1973 claims.) On cross-motions for summary judgment, the District Court reversed.
 
 
 12
 Although the Court rejected the interpretations of Medicare law set forth in the Wolkstein letter,[12] it also recognized that the PRRB rested its decision on different grounds. The Court concluded that the acquisition transactions "constituted a purchase of an on-going facility for purposes of establishing a cost basis for a facility pursuant to 20 C.F.R. § 405.415(g) (now 42 C.F.R. § 405.415(g))." The Court also concluded that "(t)here is no evidence of self-dealing or other conduct that would make the Panorama Hospital acquisition less than the result of a bona fide negotiation," and no party here has challenged this conclusion.
 
 
 13
 Accordingly, the District Court reversed the Secretary's decision and remanded to the intermediary for a determination of the exact amount owed for the 1973 cost year in conformity with the Court's findings and conclusions. The Court had previously established the formula for calculating goodwill as "the entire excess of the amount of consideration paid for Panorama Hospital over the fair market value of the tangible assets of Panorama Hospital . . .." Finally, the Court ruled that MHPC is entitled to include the goodwill in its equity capital for future cost reports, and the Court permanently enjoined the defendants "from denying plaintiff said reimbursement for any of the reasons at issue herein."
 
 
 14
 Both parties filed for reconsideration. On June 14, 1978, the District Court granted plaintiff's cross-motion to transfer its pre-1973 claims to the Court of Claims, and denied the Secretary's motion in all respects. The Secretary has appealed the judgment below to this Court. Our jurisdiction is found in 28 U.S.C. § 1291.
 
 II
 
 15
 * As in Pacific Coast judicial review of the PRRB decision is governed by the Administrative Procedure Act (APA).[13] Unlike the Secretary's decision in Pacific Coast, the PRRB disclaimed reliance upon the principles set forth in the Wolkstein letter. As a result, we are not here concerned with a question of statutory interpretation, but rather are presented with a question of sufficiency of the evidence underlying the Board's conclusion. Of course, we must still correct any misapplications of law by the PRRB.
 
 
 16
 Our standard of review is different from that applied in Pacific Coast. Unlike the Secretary's action there, the PRRB proceedings and decision were required to be "on the record," 42 U.S.C. § 1395oo(d). When a court reviews findings made on a hearing record, the substantial evidence standard of review is applicable. 5 U.S.C. § 706(2)(E); Camp v. Pitts, 411 U.S. 138, 141, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973). Moreover, the statute and regulations governing the PRRB review process also require that its decisions "shall be supported by substantial evidence."[14] Finally, the judicial review must consider the whole record. 5 U.S.C. § 706.
 
 B
 
 17
 Preliminarily, the Government urges that the case should be remanded to the District Court. This is necessary, it contends, for a judicial review focused on the legal bases relied upon by the PRRB. The Government notes that the District Court's opinion considered and rejected the conclusions of the Wolkstein letter, which was not a basis for the Board's decision. Citing SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), the Government argues that it was impermissible for the District Court to rely on any grounds other than those upon which the administrative action was based, and urges that the case should be remanded for proper judicial review.
 
 
 18
 It is true that the District Court's findings and conclusions extensively discuss the Wolkstein letter and the regulatory interpretations it contains issues which were not reached by the PRRB but were relied on by the fiscal intermediary. However, the Court was aware that the PRRB rendered its decision on grounds different from those of the intermediary.[15] The Court's memorandum of decision also includes findings and conclusions independent of those bases connected with the Wolkstein letter. The Court found that the "MHPC-Panorama Hospital transaction" was a purchase transaction for accounting purposes, and was treated as such by MHPC. The Court noted the bona fide nature of the several transactions composing the acquisition, and decided that it should be characterized as a purchase, to be treated under the regulations as any other purchase of an ongoing Medicare provider.[16] These constitute a rejection by the Court of the PRRB characterization of the transaction as an investment, and of the consequent reasoning in the Board's opinion. Moreover, this conclusion is independent of the conclusions concerning the Wolkstein letter and other matters extraneous to the grounds of the PRRB. We find these independent holdings of the District Court to be alternative bases in support of its judgment, sufficiently responsive to the PRRB to constitute proper judicial review of its decision.
 
 III
 
 19
 The Board's decision was essentially the characterization of a transaction, relying in part on the evidence in the record and in part on its own legal conclusions. As explained above, reliance on the record must be measured against the substantial evidence standard. With respect to the Board's legal conclusions, we note that under the APA review provisions it is the Court which decides all relevant questions of law, 5 U.S.C. § 706. The Court must hold unlawful and set aside findings and conclusions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. at § 706(2)(A). While ordinarily an agency's conclusions in its area of expertise will be accorded significant deference, as detailed more fully in Pacific Coast, today's cases do not especially merit such accord. The questions presented here are not demanding of medical or Medicare program expertise. Rather, they involve characterization of ordinary business transactions, interwoven with the parties' expectations and Congress' desire that providers be afforded an opportunity to be reimbursed for the full cost of meeting the medical needs of the elderly and disabled.[17] Consequently, the Board's conclusions must be subjected to close scrutiny.
 
 
 20
 Under the "substantial evidence" standard of review, a reviewing court may not substitute its judgment for that of the agency. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Substantial evidence exists if there is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); RSR Corp. v. Federal Trade Commission, 602 F.2d 1317, 1320 (9th Cir. 1979). A finding supported by substantial evidence must be affirmed by a reviewing court even if it is possible to draw two inconsistent conclusions from the evidence. Consolo; Illinois Central Railroad Co. v. Norfolk & Western Railway Co., 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966).
 
 
 21
 Review under the substantial evidence standard is not to be superficial or cursory. Rather, the court's inquiry must be searching and careful, subjecting the agency's decision to close judicial scrutiny. Further, the court is not confined to those portions of the record, if any, which the agency cites in support of its conclusions. The court is charged to review the record as a whole. Packer Transportation Co. v. United States, 596 F.2d 891, 894 (9th Cir. 1979). As such, the reviewing court must take into account whatever in the record clearly detracts from the weight of the evidence. Universal Camara Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); Beavers v. Secretary of HEW, 577 F.2d 383, 387 (6th Cir. 1978).
 
 
 22
 An examination of the administrative record here reveals no evidence supporting the Board's conclusion that OSP's 100 percent stock purchase should be characterized as an "investment," and the Board cites none in its decision. The Board's basis for this result is the failure to mention the Limited Partnership in the stock purchase agreement, that the Limited Partnership assumed no liability for the stock purchase price, and its conclusion that the several transactions should be viewed as distinct and separate occurrences. The intermediary, adverse party to MHPC below, relied on the reasoning of the Wolkstein letter in support of its position before the Board. The Board, however, has disclaimed reliance on any of these Wolkstein arguments.
 
 
 23
 In contrast, the evidence supporting the existence of a purchase is significant and uncontroverted. Over a period of several months prior to the transaction, there were many meetings between the buyers and sellers of the corporate stock. Mr. Bernstein, who was to be the general partner in the limited partnership, represented OSP in these negotiations. The limited partnership was formed to receive and operate the hospital, and the several steps were structured solely for that purpose. This structure was chosen on the advice of counsel for the convenience of the parties. The stock purchase, liquidation and distribution of assets, and transfer of assets to the partnership were all accomplished on the same day. All negotiations were conducted at arm's length. OSP never operated the hospital through the corporation, and on the day after the closing a new Medicare agreement between the Secretary and the limited partnership became effective.
 
 
 24
 The fact that the limited partnership was not mentioned in the stock purchase agreement cannot change the actual nature of the transactions. It is apparent that at all times this was intended to be, and by its action was, a purchase of an ongoing Medicare provider. The limited partnership assumed no liability for the stock purchase note because the assets acquired were OSP's contribution to the partnership. If OSP had also relinquished the debt, it would have had no net interest in the entity. The partnership did not incur the debt to the sellers of stock, but it did create a partnership net worth interest in OSP. Finally, the Board was in error in treating the stock purchase and immediate dissolution as two separate transactions. As explained in our opinion in Pacific Coast, such a characterization must be set aside.
 
 
 25
 The Board's contention that there is no determinative value to fix for the stock purchase is without merit. Although OSP and the sellers agreed to a flexible payment plan, keyed to the operating revenue and working capital of the hospital operation, there was an absolute obligation to repay any balance due after 20 years. Moreover, the balance outstanding was at all times costing OSP interest. This debt was a definite obligation, and as such establishes the historical cost for valuation of assets.
 
 
 26
 For these reasons, and those detailed today in Pacific Coast, the conclusion of the Board that the OSP action was an "investment" and not a "purchase" must be reversed as unsupported by substantial evidence. We have found no basis in the record supporting the Board's position, and significant evidence to the contrary. MHPC should be allowed to include in its equity capital the value of the goodwill realized in the stock purchase and liquidation by OSP.
 
 
 27
 As in Pacific Coast, we again emphasize that we do not intend to foreclose all agency review of such purchase transactions. Questions of valuation, arm's length, bona fides, relatedness of the parties, etc. are still very much an important part of the Secretary's review in the administration of the Medicare program. We only correct his characterization of the kind of acquisition which transpired here.
 
 IV
 
 28
 The remaining objections of the Government may be disposed of quickly, all but one having been discussed at length in Pacific Coast.
 
 
 29
 The Government contends that the District Court impermissibly extended its judgment to post-1973 cost years by paragraph 5 of its judgment:
 
 
 30
 "5. Plaintiff (MHPC) is entitled to include as equity capital in its future cost reports, and receive reimbursement for, as much goodwill purchased in the Panorama Hospital acquisition as is determined in the manner set forth above and defendants are hereby permanently enjoined from denying plaintiff said reimbursement for any of the reasons at issue herein."
 
 
 31
 Although the spirit of this order is mostly subsumed within stare decisis, it was not proper for the Court to issue an injunction which extended beyond the 1973 cost year. The order applies to future claims, claims beyond those considered by the PRRB and appealed to the District Court in this case. Because these post-1973 cost periods had not been presented in accordance with the statutory requirements for judicial review, 42 U.S.C. § 1395oo(f), the District Court was without jurisdiction to hear disputes from these periods.[18] The order of the District Court must be vacated insofar as it extends to claims not presented to and appealed from the PRRB.
 
 
 32
 As to the question of goodwill computation, the District Court's treatment appears to be identical to that in Pacific Coast. The issue of a computational formula for goodwill was not reached by the PRRB because it decided that goodwill could not be included in MHPC's equity capital. Consequently, it was not presented nor argued before the District Court. The District Court should only have ordered the Secretary to apply whatever formula is used in the usual case of the purchase of an ongoing provider.[19]
 
 
 33
 Finally, the Government contends that it was improper for the District Court to transfer pre-1973 cost year claims to the Court of Claims. It argues that just as the District Court does not have jurisdiction over these disputes, neither does the Court of Claims. That Court has determined, however, that its jurisdiction extends to these pre-1973 appeals. Whitecliff, Inc. v. United States, 536 F.2d 347, 210 Ct.Cl. 53 (1976), cert. denied, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). This Circuit has recognized the Court of Claims' jurisdiction and has previously ordered the transfer of such Medicare disputes to that Court. Drennan v. Harris, 606 F.2d 846 (9th Cir. 1979); Sierra-Vista Hospital, Inc. v. Califano, 597 F.2d 200 (9th Cir. 1979). There is no suggestion that the pre-1973 claims brought by MHPC are so different from claims in these prior cases as to warrant a different result here. Thus, the objection of the Government to the transfer of those earlier claims to the Court of Claims is controlled by our prior cases and is dismissed.
 
 V
 
 34
 We find that the decision of the Secretary was unsupported by substantial evidence and erroneous and arbitrary in its legal conclusions. Consequently, MHPC must be allowed to claim goodwill in its equity capital for purposes of Medicare reimbursement claims. Goodwill is to be calculated as for any purchase of an ongoing provider, recognizing the full price paid in the 100 percent stock purchase as the cost of purchase.
 
 
 35
 The District Court's reversal of the PRRB is affirmed. That portion of the judgment of the District Court which extends its order to post-1973 claims is vacated for want of jurisdiction. Its order regarding computation of goodwill is modified as above. The transfer of the pre-1973 claims to the Court of Claims is affirmed. In all other respects, the judgment of the District Court is affirmed. This cause is remanded to the District Court with instructions to remand to Blue Cross of Southern California for computation of actual amounts owed, and for such other action as the District Court deems necessary and appropriate, consistent with this opinion.
 
 
 36
 AFFIRMED IN PART AS MODIFIED, VACATED IN PART, AND REMANDED.
 
 
 
 *
 We substitute the name Patricia Harris, the successor to the original appellant Joseph A. Califano, as the Secretary of the United States Department of Health, Education and Welfare, per Fed.R.App.P. 43
 
 
 **
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 42 U.S.C. §§ 1395-1395rr. A brief review of the Medicare program, as relevant to these cases, is presented in Part I-A of our opinion in Pacific Coast
 
 
 [2]
 This is a separate and distinct entity from the appellee here, Memorial, Inc. The earlier corporation was dissolved on September 30, 1968
 
 
 [3]
 This limited partnership was known as "Memorial Hospital, limited partnership."
 
 
 [4]
 The repayment formula was defined by the following provisions:
 "(b) Payment Schedule.
 "Payment shall be made by Buyer to Sellers, to be applied first against any accrued and unpaid interest, and thereafter against principal of the Purchase Price hereunder, according to the within provisions of this paragraph 3(b).
 "(1) Down Payment.
 "Upon the closing hereunder, Buyer shall pay to Sellers the sum of Five Hundred Thousand Dollars ($500,000.00), to be paid to Sellers' representative (hereinafter provided for).
 "(2) Quarterly Installments.
 "Following the closing hereunder, Buyer shall pay to Sellers within thirty (30) days following the close of each fiscal quarter a sum equal to seventy-five percent (75%) of the first One Hundred Nine Thousand, Three Hundred Twenty Dollars ($109,320.00) of net earnings of the business during such fiscal quarter; plus a sum equal to forty-five and 86/100ths percent (45.86%) of the net earnings of the business during such fiscal quarter in excess of One Hundred Nine Thousand, Three Hundred Twenty Dollars ($109,320.00); provided, however, that Buyer shall pay to Sellers under the foregoing formula an aggregate sum of not less than Nine Hundred Eighty-Three Thousand, Eight Hundred Eighty Dollars ($983,880.00) during any consecutive three (3) year period; provided, further, that the entire unpaid balance shall be due and payable in any event twenty (20) years following the closing hereunder.
 "In no event, however, shall any payment to Sellers be required by this paragraph 3(b)(2) to the extent that such payment would reduce the working capital of the Hospital business (including accounts receivable at full face value less such reserves thereon as are established by the accountant for the hospital business) to less than Two Hundred Thousand Dollars ($200,000.00)."
 
 
 [5]
 The treatment of these assets is not in dispute and is not involved in this appeal
 
 
 [6]
 The limited partnership agreement indicates that both the assets obtained from the corporation and those obtained from PHA were OSP's capital contribution
 
 
 [7]
 When ownership of a provider of Medicare services is transferred, the existing agreement with the Secretary is invalidated. The new entity must establish that it meets the conditions for participation in the Medicare program and enter into a new agreement. 42 C.F.R. § 405.625 (1978)
 
 
 [8]
 This goodwill amount was calculated as the entire difference between the book value of the assets and the actual purchase price of the corporation's stock
 
 
 [9]
 This was a 1979 letter from the Deputy Director for Program Policy of the Bureau of Health Insurance, a Mr. Irwin Wolkstein, to a fiscal intermediary administrator. The letter set forth a policy not to recognize a 100 percent stock purchase coupled with a subsequent corporate dissolution as a purchase of assets for purposes of asset revaluation. This reasoning and conclusion of the Wolkstein letter was rejected by the District Court in Pacific Coast Medical Enterprises v. Califano, 440 F.Supp. 296 (C.D.Cal.1977), which we affirm today in Pacific Coast
 
 
 [10]
 MHPC asserted the same claims for the cost years 1968 through 1972. These claims were also denied by the intermediary and were considered and denied at the hearing level by the intermediary, Blue Cross Association. The District Court ultimately found it had no jurisdiction to review these pre-1973 claims, but granted MHPC's motion to transfer them to the Court of Claims. See text following note 19, infra
 
 
 [11]
 See note 4, supra
 
 
 [12]
 These interpretations are essentially set forth as the Secretary's position in Part II of our opinion in Pacific Coast
 
 
 [13]
 The APA provisions concerning judicial review are found at 5 U.S.C. §§ 701-706. These standards are mandated by 42 U.S.C. § 1395oo(f). See Part III-A of our opinion in Pacific Coast
 
 
 [14]
 42 C.F.R. § 405.1871(a) (1978); 42 U.S.C. § 1395oo(d). It is by now axiomatic that agencies must comply with their own regulations while they remain in effect. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Ruangswang v. Immigration and Naturalization Serv., 591 F.2d 39, 46 n. 12 (9th Cir. 1978); United States Lines v. Federal Maritime Comm'n, 189 U.S.App.D.C. 361, 368 n. 20, 584 F.2d 519, 526 n. 20 (D.C.Cir. 1978)
 
 
 [15]
 The Court explicitly made this finding, and recognized the grounds which the PRRB relied on:
 "The PRRB upheld the denial of the provider's claim with respect to goodwill and interest, not, however, on the grounds asserted by defendants. Instead, the PRRB denied the provider's claim, in substance, because (i) it concluded that OSP, the limited partner, incurred these expenses, rather than Memorial Hospital, limited partnership, the provider, and (ii) because the purchase price was contingent."
 
 
 [16]
 The District Court concluded:
 "There is no evidence of self-dealing or other conduct that would make the Panorama Hospital acquisition less than the result of a bona fide negotiation. Under these circumstances, MHPC's purchase of 100% of the stock of the Memorial Hospital Corporation when coupled with the concurrent acquisition of the physical facilities of Panorama Hospital which had been leased to Memorial Hospital Corporation and the immediate liquidation of the corporation and the formation of a new limited partnership to operate the hospital, constituted a purchase of an on-going facility for purposes of establishing a cost basis for a facility pursuant to 20 C.F.R. § 405.415(g) (now 42 C.F.R. § 405.415(g))."
 
 
 [17]
 See Part III-B of our opinion in Pacific Coast
 
 
 [18]
 See Part IV-B of our opinion in Pacific Coast
 
 
 [19]
 The Secretary has, however, issued some guidance as to this computation. The Provider Reimbursement Manual, HIM-15, issued by the Bureau of Health Insurance of the Social Security Administration, provides that the computation of goodwill is to be governed by generally accepted accounting principles. Provider Reimbursement Manual, HIM-15, § 1214 (Nov. 1968 Revision)