**WILMOT PSYCHIATRIC/MEDICENTER TUCSON; Dominguez Valley Hospital; Ojai Community Hospital; Manteca Hospital, Plaintiffs–Appellants,**

v.

**Donna E. SHALALA,\* Secretary of the Department of Health & Human Services, Defendant–Appellee.**

No. 92–55602.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided Dec. 16, 1993.

---

\* Donna E. Shalala succeeded Louis W. Sullivan, M.D., as Secretary of Health and Human Services on January 22, 1993, and is substituted as Appellee pursuant to Fed.R.App.P. 43(c)(1).

Patric Hooper, Hooper, Lundy & Bookman, Los Angeles, CA, for plaintiffs-appellants.

George H. Wu, Asst. U.S. Atty., Los Angeles, CA, Jerry J. Bassett, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, CA, for defendant-appellee.

Before: REINHARDT, T.G. NELSON, Circuit Judges, and KAUFMAN,** District Judge.

T.G. NELSON, Circuit Judge:

## OVERVIEW

This case arises from the Secretary of Health and Human Services' ("Secretary") decision not to reimburse Wilmot Psychiatric/Medicenter and several other hospitals ("hospitals") under Part C of the Medicare program. Title XVIII of the Social Security Act, 42 U.S.C. § 1395x(v)(1)(A), for the cost of complimentary meals provided by the hospitals to attending physicians, who have staff privileges at the hospitals. The hospitals appeal the district court's summary judgment in favor of the Secretary. We affirm.

## FACTS AND PROCEDURAL HISTORY

Wilmot Psychiatric/Medicenter and several other hospitals seek reimbursement through the Medicare program for unrecovered meal expenses. The hospitals incurred these meal expenses by providing complimentary meals to private physicians who had staff privileges at the hospitals. The complimentary meals were provided to the physicians while they attended to their own private patients whom they had admitted to the hospitals. After the Medicare fiscal intermediaries initially denied reimbursement, the hospitals appeal-

ed to the Provider Reimbursement Review Board ("PRRB"). Following a hearing, the PRRB issued decisions in favor of the hospitals. The PRRB held that the costs for the complimentary meals for attending physicians were reasonable and related to patient care.

Upon review of the PRRB's decisions, the Secretary, interpreting the Medicare Act, the regulations, and the Provider Reimbursement Manual ("manual" or "PRM"), reversed those decisions and held that the meal expenses were not reimbursable. The district court affirmed the Secretary's decision. The hospitals appeal the district court's holding, and argue that the Secretary's decision is unsupported by substantial evidence. *See* 5 U.S.C. § 706.

## DISCUSSION

### I. Standard of Review

"We review *de novo* a district court's award of summary judgment affirming a decision of the Secretary in a Medicare reimbursement matter." *Vallejo Gen. Hosp. v. Bowen*, 851 F.2d 229, 230–31 (9th Cir.1988). Therefore, this court must review the Secretary's final decision to determine whether it was "arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole." *Id.* at 231. "When this standard of review is applicable, the agency determination will not be set aside unless it is clearly erroneous or inconsistent with the regulation or demonstrably irrational." *North Clackamas Community Hosp. v. Harris*, 664 F.2d 701, 704 (9th Cir. 1980) (internal quotations omitted).

### II. Medicare Act

Pursuant to the Medicare Act, 42 U.S.C. § 1395x(v)(1)(A) (1988), providers of health services are entitled to reimbursement for reasonable costs necessary for the efficient delivery of needed health services. *National Medical Enters., Inc. v. Sullivan*, 916 F.2d 542, 544 (9th Cir.1990), *cert. denied*, —— U.S.

** Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation.

——, 111 S.Ct. 2014, 114 L.Ed.2d 100 (1991). Congress authorized the Secretary to further define "reasonable costs" by regulation. *Vista Hill Found., Inc. v. Heckler,* 767 F.2d 556, 558 (9th Cir.1985). "Reasonable costs" are defined as "those that are the necessary and proper costs incurred in rendering the services." *Id.* (internal quotation omitted). In 42 C.F.R. § 413.9(b)(2), the Secretary "define[s] necessary and proper costs as those costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs which are common and accepted occurrences in the field of the provider's activity." 767 F.2d at 558 (internal quotation omitted). The Secretary determines whether a particular cost is reasonable. *See St. Elizabeth Community Hosp. v. Heckler,* 745 F.2d 587, 589 (9th Cir.1984); 42 U.S.C. § 1395x(v)(1)(A).

Reimbursement to the hospitals is generally made through fiscal intermediaries (usually private insurance companies) in accordance with contracts with the Secretary. The hospitals submit annual cost reports to their fiscal intermediaries who in turn determine the reimbursable costs. In the event that a hospital is dissatisfied with the fiscal intermediary's determination of reimbursement, it may request a hearing before the PRRB, which hears the matter and issues a decision. 42 U.S.C. § 1395oo(a), (d). The decision of the Board is final unless the Secretary, on his own motion, and within sixty days after the hospital is notified of the PRRB's decision, affirms, modifies, or reverses the PRRB's decision. The hospitals have the right to seek judicial review of any final decision of the Board, or of the Secretary. 42 U.S.C. § 1395oo(f)(1).

To aid intermediaries in applying the Medicare statute and reimbursement regulations, the Secretary issued the PRM. The PRM is not binding like a law or regulation. Rather, it guides the application of the laws and regulations. *National Medical Enters. v. Bowen,* 851 F.2d 291, 293 (9th Cir.1988). Section 2102.3 (1986) of the PRM states that "costs which are not appropriate or necessary and proper in developing and maintaining the operation of patient care facilities and activities" are not reimbursable.

### III. *"Reasonableness" of Free Meals*

The Medicare Act allows reimbursement for "reasonable" costs necessary for the efficient delivery of health services. 42 U.S.C. § 1395x(v)(1)(A). The statute offers no definition of the term "reasonable." When "[c]onfronted with an ambiguous statutory provision, we generally will defer to a permissible interpretation espoused by the agency entrusted with its implementation." *Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993). The Secretary defines "reasonable" as those costs which are "necessary and proper" in rendering health services, and further defines "necessary and proper" as those costs which are "appropriate and helpful" in developing and maintaining the operation of patient care facilities and activities. The regulation also states that necessary and proper costs are "usually costs that are common and accepted occurrences in the field of the provider's activity." 42 C.F.R. § 413.9(b)(2).

The progression from the statutory "reasonable" costs to "necessary and proper" costs to "appropriate and helpful" costs does not assist the analysis. However, given the breadth of the Secretary's discretion, she has not limited her ability to disapprove the costs involved here, as they lend themselves as readily to an "appropriate" analysis as they would a "necessary" or "reasonable" analysis. The regulation demonstrates what we said in an earlier case:

> At the time the Medicare provisions were enacted Congress was aware of the complexities of determining reasonable costs for services to be provided under the program. Hence the agency was afforded a great deal of discretion in promulgating its regulations. Given the significant number of variables to be considered in determining the reasonable costs of Medicare services, the results will necessarily be imprecise.

*Mercy Hosp. & Medical Ctr., San Diego v. Harris,* 625 F.2d 905, 910 (9th Cir.1980) (citation omitted).

In *St. Elizabeth,* this court stated that "[d]eference is accorded the Secretary's interpretation of his own regulations where he has expertise in the substantive area involved and where the regulations were promulgated pursuant to congressional authorization." 745 F.2d at 592. "[W]e must examine the interpretation itself in light of the language of the regulations. The words must be reasonably susceptible to the construction placed upon them by the Secretary, both on their face and in light of their prior interpretation and application." *Id.* (internal quotation omitted). The Secretary's interpretation of the regulations in this case is consistent with prior agency decisions regarding complimentary meals for attending physicians. *See Suburban Hosp. v. Blue Cross,* Medicare & Medicaid Guide (CCH) ¶ 29,953 (1979) (employee meal costs allowable, but visitor meal costs denied); *Hollywood Presbyterian Medical Ctr. v. Blue Cross,* Medicare & Medicaid Guide (CCH) ¶ 31,907 (1982) (visitor meal costs not reimbursable because not related to patient care); *Pioneer Hosp. v. Travelers,* Medicare & Medicaid Guide (CCH) ¶ 32,472 (1983) (costs for employee meals allowable but meal cost for attending physicians not reimbursable because unnecessary for the efficient delivery of health services).

Acknowledging that the manual guidelines are not evidence for the purpose of the hearing, the hospitals argue that the guidelines do not support the Secretary's decision. The manual provides separate guidelines for reimbursement of meals provided to employees and meals provided to hospital "personnel." Because by law physicians may not be "employed" by hospitals, the hospitals argue that the use of two different terms indicates an intent that the term "personnel" must include the hospitals' medical staffs. Therefore, the hospitals contend that "medical staff" necessarily includes attending physicians.

Section 2105.2[1] of the manual does not allow the reimbursement of meal costs for other than provider personnel. The Secretary concludes that attending physicians are not classified as "provider personnel." The Secretary interprets the term "provider personnel," as used in the manual, to include only employees and provider-based physicians. Provider-based physicians are those physicians who work at the hospitals on a full-time basis under a contract. The Secretary distinguished attending physicians from provider-based physicians on the basis that attending physicians have private practices outside the hospitals; they have staff privileges at more than one hospital; and they are at the hospitals for the purpose of attending to their private patients.

When reviewing an agency's interpretations of the Medicare Act and relevant regulations,

> [w]e consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which gave it power to persuade, if lacking power to control.

*Mercy Hosp.,* 625 F.2d at 907 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

At the PRRB hearing, the hospitals presented expert testimony by physicians to support the hospitals' argument that complimentary meals for attending physicians should be reimbursed.[2] The physicians con-

---

1. PRM–I, § 2105.2 states: "The cost of meals for other than provider personnel, whether served in a cafeteria, coffee shop, canteen, etc., is unallowable under the program because it is not related to patient care...."

2. Dr. Moss, who has been on the medical staff of many hospitals, stated that the complimentary meals (1) enable physicians to learn about each other's area of expertise; (2) allow new physicians to meet other members of the medical staff; (3) encourage camaraderie among the physicians and hospital administrators; (4) allow physicians to attend to their hospitalized patients for longer periods of time; (5) allow physicians to assist in hospital emergencies involving patients; (6) assure continuity of care; and (7) enable physi-

firmed that complimentary meals for the members of a hospital medical staff is common in the health care industry.

The fact that it is a common and accepted occurrence for hospitals to provide complimentary meals to attending physicians does not necessarily demonstrate that the costs involved are reasonable costs necessary for the efficient delivery of health services. In *Holy Cross Hosp.–Mission Hills v. Heckler*, 749 F.2d 1340 (9th Cir.1984), we affirmed the Secretary's decision to deny reimbursement for bedside patient phones despite the hospital's argument that the patient phones were ordinarily furnished by hospitals. *Id.* at 1344–45. We held that in order to reimburse expenses, they must not only be ordinary, but they must also be necessary. *Id.* at 1345.

The hospitals argue that because the PRRB hearing is "on the record," we must apply the "substantial evidence" standard. They rely upon *Memorial, Inc. v. Harris*, 655 F.2d 905 (9th Cir.1980), where this court stated that the "substantial evidence" standard of review is applicable when the court reviews findings on a hearing record. *Id.* at 910. Because the Secretary did not present evidence to support her decision to deny the reimbursement, the hospitals argue that under the substantial evidence standard, her decision must be reversed.

The hospitals' reliance on the "substantial evidence" standard of review is misplaced. The issue in *Memorial* was whether the acquisition of the corporate medicare provider's assets by a limited partnership was a "sale." The court explained it was not "concerned with a question of statutory interpretation, but rather ... presented with a question of sufficiency of the evidence underlying the Board's conclusion." *Id.* The factual findings in *Memorial* were substantiated by records of negotiations, stock transactions, and record of ownership. *Id.* at 912–13.

However, the issue in this case is not truly a factual one and cannot be resolved through the presentation of records or other types of "factual evidence." The hospitals showed that reimbursement of costs for complimentary meals for attending physicians is a common practice in the industry, but the case does not turn on that factual determination. This case involves the *reasonableness* of providing complimentary meals for attending physicians under the Medicare Act. The evidence presented by the hospitals on the basic issue was that it would be reasonable to reimburse hospitals for free meals for attending physicians. However, the Secretary's opinion was to the contrary, and it is her view that is entitled to deference.

The hospitals next cite *Vista Hill*, 767 F.2d 556, in support of their position that we cannot sustain the Secretary's decision to deny reimbursement because of the lack of evidence supporting the Secretary's decision, as well as the Secretary's failure to rebut their evidence.[3] This case is distinguishable from *Vista Hill*. In *Vista Hill*, the Secretary denied reimbursement to the hospital for educational services provided for pediatric patients. We reversed the district court's summary judgment in favor of the Secretary based on the lack of evidence in support of the Secretary's decision. *Id.* at 560–62. We also stated that we would not give deference to the Secretary's opinion in a matter regarding medical necessity where the Secretary possessed no expertise. *Id.* at 560. In the case at bar, the issue is the reasonableness of complimentary physician meals, an issue which does not involve professional medical judgment.[4]

## IV. *Consistency in the Policies*

In determining that costs for complimentary meals were reasonable, the PRRB analo-

cians to discuss their patients' cases with other physicians in order to provide appropriate care.

3. In order to rebut the hospitals' evidence, the intermediaries would only have needed physicians to testify that complimentary meals for visiting physicians were not necessary and proper in rendering health services. Such testimony would not have been helpful in this case where the issue is not one requiring medical expertise.

4. The evidence submitted by the hospitals regarding the necessity of the complimentary meals was rejected by the Secretary because she was unpersuaded by the physicians' testimony that complimentary meals for attending physicians were related to patient care.

gized the meal costs with costs associated with free parking, medical staff meetings, and physician lounges which have been deemed "reasonable" costs. [PRRB Decision at 8.] Allowing reimbursement for the cost of free parking for physicians and costs associated with medical staff meetings but disallowing costs for complimentary meals for physicians may seem arbitrary. However, complimentary meal costs can be distinguished from costs related to free parking, lounges, and medical staff meetings. For example, in *Research Medical Ctr. v. Schweiker,* 684 F.2d 599 (8th Cir.1982), the court distinguished costs associated with a hospital's coffee shop from reimbursable costs such as those associated with parking lots, lobbies, and other services provided for visitors. In *Research,* the Eighth Circuit stated that "it is reasonable to believe that the lack of a coffee shop would have a minor effect on the number of visitors compared with the lack of waiting rooms, lobbies, or parking lots." *Id.* at 606.

Similarly, the lack of free meals for attending physicians would have a minor effect on the health care services provided to patients compared with the lack of convenient free parking or organized medical staff meetings. Convenient free parking for doctors is related to patient care in that parking is necessary for doctors who routinely stop by the hospitals to attend to their patients. Furthermore, organized medical staff meetings provide a forum for physicians, hospital administration, and management personnel to discuss topics such as possible expansion, additional services, new equipment, and new technology, all of which have a major impact on the health care services provided to patients. The Secretary did not believe that health care would be negatively impacted just because attending physicians are not provided with complimentary meals.

### CONCLUSION

We reject the hospitals' argument that we must review the Secretary's decision under the substantial evidence standard. The issue in this case is whether the cost of complimentary meals provided to attending physicians by the hospitals is reasonable. In light of the broad deference we give to the Secretary's interpretation of regulations, prior agency decisions, and the Secretary's expertise, we conclude that the Secretary's decision not to reimburse the cost of complimentary meals for attending physicians was not an abuse of discretion.

AFFIRMED.