**GRANT MEDICAL CENTER, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. C–2–94–607.

United States District Court,
S.D. Ohio,
Eastern Division.

Aug. 17, 1995.

Diane Marie Signoracci, Columbus, OH, for plaintiff.

James Rattan, Assistant United States Attorney, Columbus, OH, for defendant.

## MEMORANDUM AND ORDER

BECKWITH, District Judge.

This matter is before the Court for consideration of cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Grant Medical Center ("Grant") challenges the Secretary's adjustment of Grant's Medicare reimbursement payments for indirect medical education ("IME") costs during the hospital's fiscal years ended December 31, 1988 and June 30, 1989. The Secretary contends that the determination made by the Health Care Financing Administration ("HCFA") Administrator is a reasonable and consistent interpretation of agency regulations.

### Background

The Medicare program provides reimbursement for covered medical care for the elderly and certain disabled persons, including care provided by participating hospitals, according to the terms of the Medicare Act ("the Act") and implementing regulations. 42 U.S.C. § 1395x(e), *et seq.* Under the Act, providers of services, such as Grant, are reimbursed through private organizations acting as fiscal intermediaries in accordance with principles defined in the Act itself, in regulations, and in agency interpretive manuals.

For fiscal 1984, Congress established a prospective payment system ("PPS") that provides reimbursement by single payment for inpatient operating costs at acute care hospitals. 42 U.S.C. § 1395ww(d). The Secretary implemented the PPS in regulations now codified at 42 C.F.R. Part 412.

In recognition of the fact that teaching hospitals have indirect operating costs that would not be reimbursed under the PPS, the Secretary authorized an additional payment, which became known as the IME, to hospitals that have approved graduate medical education programs. 42 U.S.C. § 1395ww(d)(5)(B). The IME is calculated by multiplying a hospital's diagnosis-related group ("DRG") revenue by an IME adjustment factor, which is itself calculated as ratio of medical residents to beds. 42 C.F.R. § 412.118(b) (now recodified and amended at 42 C.F.R. § 412.105). The fewer the beds relative to the number of residents, the higher the IME payment received by the hospital. The dispute in this case centers on Grant's exclusion, and the fiscal intermediary's subsequent inclusion, of infant beds in the hospital's level two nursery.

Grant operates an approved medical education program and is entitled to IME reimbursement from the Secretary. Grant houses a 27–bed Level I nursery and a 14–bed Level II nursery. The Level I nursery provides care for healthy babies, while the Level II nursery provides care for sicker babies. The care is more routine, less expensive, and less intrusive in the Level I nursery. Because the Level II nursery serves babies with complications or illnesses, it contains more sophisticated equipment and is sometimes described as a newborn intensive care unit ("NICU"). The difference between the Level I and Level II nurseries is roughly analogous to the difference between standard care and intensive care in the adult areas of the hospital.

In calculating its IME entitlement in its cost reports for the fiscal years ending December 31, 1988 and June 30, 1989, Grant excluded all its newborn beds in both nurseries. The fiscal intermediary, Blue Cross/Blue Shield/Community Mutual Insurance Company, included only the Level II or NICU beds and not the 27 Level I beds in its calculation for both the 1988 and 1989 fiscal years.

Grant appealed the intermediary's adjustments to the Provider Reimbursement Review Board ("PRRB") in accordance with the provisions of 42 U.S.C. § 1395oo(a) and (b) and 42 C.F.R. §§ 405.1835 and 405.1837. Grant argued that the Secretary's determination regarding bed count was inconsistent with the governing regulation, 42 C.F.R. § 412.118(b). The PRRB agreed with Grant and reversed the adjustments in a decision issued March 15, 1994. The PRRB found specifically that the 1988 Provider Reimbursement Manual provision, which included newborn special care beds in the patient count, was inconsistent with the controlling regulation. (Tr. 26–32).

The intermediary then requested review by the HCFA Administrator, who issued his opinion on May 15, 1994 overturning the PRRB and sustaining the intermediary's disallowance. The Administrator reasoned that the intermediary's interpretation of the regulation was reasonable and consistent with HCFA's longstanding policy on bed counting. (Tr. 2–6.)

## Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

In the instant action, the parties agree that there are no genuine issues of material fact to be determined and that summary judgement is appropriate.

## Analysis

1. *Standard of Review*

■ The Administrative Procedures Act ("APA"), which, pursuant to 42 U.S.C. § 1395oo(f), is designated as setting the standard of review for decisions of the HCFA Administrator, provides that the Court is to set aside an agency action that is

> arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; contrary to a constitutional right, power, privilege or immunity; or unsupported by

substantial evidence where an agency hearing is being reviewed on the record. 5 U.S.C. § 706.

Grant argues that, despite the language of the APA, this Court must give a lesser degree of deference to the HCFA Administrator's decision in this case. The special circumstances of the instant case, according to Grant, merit closer scrutiny than the statute would require in the ordinary case. The Court does not agree.

Though the Court's inquiry must indeed be "searching and careful," *Memorial, Inc. v. Harris*, 655 F.2d 905, 912 (9th Cir.1980), none of the numerous cases cited by Grant stands for the proposition that this Court is to ignore the plain language of the statute. That language requires that the final decision of the Secretary be upheld unless the reviewing court finds the decision to have been arbitrary and capricious. In the words of the United States Supreme Court,

> Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather the agency's interpretation must be given "controlling" weight unless it is plainly erroneous or inconsistent with the regulation.

*Thomas Jefferson University v. Shalala*, —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). *See also Shalala v. Guernsey Memorial Hosp.*, —— U.S. ——, ——, 115 S.Ct. 1232, 1237, 131 L.Ed.2d 106 (1995); *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991); *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Sioux Valley Hospital v. Shalala*, No. 93–3741 SD, 1994 WL 377024, 1994 U.S.App. LEXIS 17759 (8th Cir. July 20, 1994).

■ The Court agrees with the Secretary who contends that her final decisions are due particular deference when, as in this case, the issues require technical interpretations of complex agency regulations. "This broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in

which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.' " *Sioux Valley Hospital, supra,* at *4, 1994 U.S.App. LEXIS 17759 at *10 (quoting *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 697, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991)).

■ Grant argues that the Secretary's final decision deserves less deference when the HCFA Administrator and the PRRB disagree on the proper interpretation of the regulation at issue. Because the PRRB is composed of five members, who are required by statute to be knowledgeable in the field of cost reimbursement, a conflict in interpretation between the Board and the Administrator, Grant contends, should raise a red flag of caution, and the Court should apply heightened scrutiny to the Secretary's final decision.

Admonitions of caution and care aside, a conflict between the PRRB and the Administrator does not, in the Court's view, alter the fact that the Secretary is entitled to establish administrative procedures that include both the PRRB and the HCFA in pursuit of her ultimate conclusion. Moreover, the final decision that emerges from that procedure is, by statutory command, entitled to substantial deference from the reviewing court.

Finally, Grant asserts that a statistical analysis of PRRB and HCFA decisions on reimbursement issues reveals a bias on the part of the HCFA against providers and in favor of intermediaries such that the decision in this case must be regarded as "suspect". Not surprisingly, this argument equally supports the contention that the PRRB is biased in favor of providers. The issue before the Court is not the integrity of either the PRRB or the HCFA. Rather, the issue is whether the HCFA's decision is based upon a reasonable and consistent interpretation of the applicable law.

### 2. *Application of the Arbitrary and Capricious Standard*

■ The dispute in this case centers upon the interpretation of 42 C.F.R. § 412.118(b) [1], which governs the determination of the IME adjustment and provides as follows:

Determination of number of beds. For purposes of this section, the number of beds in a hospital is determined by counting the number of available bed days during the cost reporting period, not including beds assigned to newborns, custodial care, and excluded distinct part hospital units, and dividing that by the number of days in the cost reporting period.

*Id.*

The duty of this Court is to determine whether the Secretary's decision to include the NICU beds in Grant's Level II nursery in the provider's bed count was plainly inconsistent with the regulation and, therefore, arbitrary and capricious. Grant argues that the plain language of the regulation provides that beds assigned to newborns are not included in the bed count for IME purposes. Because neither the HCFA Administrator nor the fiscal intermediary disputes that Grant's Level II nursery beds are assigned exclusively to newborns, Grant contends that recognition of this fact should terminate the inquiry. Grant's argument is seductively simple. It ignores, however, the possibility that the regulation may be susceptible to alternate interpretations, in which case the Secretary's interpretation is entitled to deference.

In the absence of controlling law on point from this circuit, the Court looks to the other circuits for guidance. The precise question raised in this case was decided recently by the United States Court of Appeals for the Eighth Circuit in *Sioux Valley Hospital.* That court concluded that "[t]he reference to 'newborns' in the regulation can reasonably be interpreted to exclude only newborn bassinets receiving routine care. Further, the language of the regulation permits an inter-

---

**1.** Section 412.118 was the governing regulation during fiscal years 1988 and 1989, which are at issue in this case. Section 412.118 was later amended by the Secretary in compliance with formal rulemaking procedures and was redesig- nated 42 C.F.R. § 412.105. Section 412.105, which took effect on October 1, 1991, modifies the regulation to exclude from the IME count only "nursery beds assigned to newborns that are not in intensive care areas."

pretation that neonatal intensive care beds are properly counted as ICU beds." *Sioux Valley Hospital, supra,* at *3, 1994 U.S.App. LEXIS 17759 at *7.

This Court agrees with the *Sioux Valley Hospital* court's analysis. The question is not whether Grant's interpretation of the regulation language is plausible, as it undeniably is. Rather, the question is whether the HCFA's decision is also a plausible and reasonable interpretation of the regulation. If so, the decision is neither arbitrary nor capricious and must be upheld. " 'A reviewing court should not reject reasonable administrative interpretation even if another interpretation may also be reasonable.' " *Id.* at *5 1994 U.S.App. LEXIS 17759 at *13 (quoting *Creighton Omaha Regional Health Care Corp. v. Bowen,* 822 F.2d 785, 789 (8th Cir. 1987)). Nor is the Court free to substitute its own interpretation of the regulation for a reasonable interpretation made by the administrator of an agency. *Sioux Valley Hospital, supra,* at *4–5, 1994 U.S.App. LEXIS 17759 at *12 (citing *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)).

Grant asserts that the Secretary's interpretation of 42 C.F.R. § 412.118(b) is unreasonable because (1) it is inconsistent with the plain language of the regulation and (2) it is not, as the Secretary contends, the expression of a longstanding policy, but rather a substantive change in the regulation governing IME payments. The Court's treatment of the plain language argument above suffices to dispose of the first assertion. The second assertion, however, merits further comment.

■ Grant contends that prior to the Secretary's revision of the Provider Reimbursement Manual ("PRM") § 2405.3G in August 1988 and the amendment and redesignation of 42 C.F.R. § 412.118 to 42 C.F.R. § 412.105 in September 1994, the Secretary made no distinction between regular nurseries and intensive care nurseries in excluding nursery costs. Grant contends that the amendments constituted improper substantive changes.

Grant is correct that if this Court were to find that the Secretary had made substantive changes to an agency regulation without following the required procedure, the Court would have no choice but to nullify administrative decisions made on the basis of the improperly amended regulation. The Court does not find, however, that the amendment at issue was improper.

First, the Court notes that even Grant does not assert that the September 1994 amendment and redesignation was improper or in violation of formal rulemaking procedure. Grant points to the amendment, however, as support for its contention that 42 C.F.R. § 412.118 was substantively changed by the 1994 amendment. Grant argues that the simple fact of amendment "shows that the two versions of the regulation are different; the former version did not have the same meaning as the later version." Grant's Memorandum, p. 19. Grant's observation, with supporting citations, that amendment implies substantive change is not dispositive. The present litigation is evidence enough that interpretation of the regulation was generating confusion, conflict, and litigation costs for interested parties. Under such circumstances, amendment for the purposes of clarification is reasonable. The Court refuses to adopt a conclusive presumption that every amendment of an agency regulation is necessarily a substantive change and not a simple clarification of longstanding policy.

Indeed, the 1994 amendment was certainly a restatement of policy the Secretary had been following for at least the previous six years. This is evidenced by the Secretary's revision of PRM § 2405.3G in 1988.

The Secretary represents that the policy of including infant special care unit beds in the IME bed count is longstanding. She offers evidence of a regulatory distinction made by the agency on the basis of infant ICU care and routine infant care for an analogous cost reporting purpose. *See* PRM § 2202.7.I.A (Defendant's Exhibit C). She also argues that the longstanding policy is consistent with her interpretation of "beds assigned to newborns" in 42 C.F.R. § 412.118(b) as "newborn bassinets in the hospital nursery." Defendant's Memorandum, p. 17 (citing the

decision of the HCFA Administrator, No. 94–D14; R., p. 6.)

The Secretary further argues that her policy is reasonable because the costs generated by a routine care nursery are not comparable to those generated by an NICU. The goal of the Medicare program is to reimburse the provider in a manner that fairly reflects costs actually incurred. Accordingly, the Secretary asserts that her distinction between intensive care beds and routine care beds is reasonable, while a distinction between adult ICU and NICU beds would not be reasonable.

Again, the Court agrees with the analysis in *Sioux Valley Hospital.* The Court finds that the text of 42 C.F.R. § 412.118(b) is susceptible to more that one interpretation and that the Secretary's interpretation of the language was indeed reasonable. As in *Sioux Valley,* the Court does "not deem it unreasonable for the Secretary to interpret this manual definition as including intensive care newborn beds in the formula in question, although one might construe it as the Hospital urges us to do in this case." *Sioux Valley Hospital, supra,* at *5, 1994 U.S.App. LEXIS 17759 at *13.

### Conclusion

The applicable standard of review when a provider challenges a final decision by the Secretary interpreting agency regulations is whether the Secretary's interpretation was arbitrary or capricious. In the present case both parties have presented and relied upon reasonable and plausible interpretations of the regulation. Under such circumstances the Secretary's interpretation is not arbitrary or capricious. This Court may not, therefore, substitute its judgment for that of the Secretary. The Secretary's Motion for Summary Judgment is hereby **GRANTED,** and Grant Hospital's Motion for Summary Judgment is hereby **DENIED.** This action is **DISMISSED.**

**IT IS SO ORDERED.**